BENJAMIN B. WAGNER
United States Attorney
PATRICK R. DELAHUNTY
MEGAN A. S. RICHARDS
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone:  (559) 497-4000
Facsimile:   (559) 497-4099

MAUREEN C. CAIN
U.S. Department of Justice
Child Exploitation & Obscenity
1400 New York Ave, Suite 600
Washington, D.C. 20530
Telephone: (202) 616-1685
Facsimile: (202) 514-1793

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>        v.<br><br>SHAWN JOSEPH McCORMACK,<br><br>                              Defendants. | CASE NO.  1:11-CR-00324 AWI<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE REGARDING STIPULATIONS AND "OTHER ACTS"<br><br>DATE: March 16, 2015<br>TIME: 10:00 a.m.<br>COURT: Hon. Anthony W. Ishii |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE REGARDING STIPULATIONS AND "OTHER ACTS"**

### TABLE OF CONTENTS

I.    FACTUAL BACKGROUND ............................................................................2
      A.    Toronto Police Department's Initial Undercover Investigation............................2

      B.    Toronto Lead Was Worked By DHS and Colorado Springs Police Department ....3

      C.    In a Separate Yet Simultaneous Investigation, DHS in Boston and California
            Work To Identify The Perpetrator, Minor Victim "B" And The Location Of The
            Sexual Abuse From The Swirl Carpet Series .....................................................4

      D.    November 6, 2009 Child Endangerment/Willful Cruelty to Child Incident............6

      E.    Identification Of "B" and "E"...............................................................................7

      F.    Arrest of McCormack on Federal Charges and Additional Search Warrants..........7

      G.    Mirandized, Videotaped Interview of Defendant ...................................................8

      H.    Search Warrant On Email Accounts Tied To Defendant.........................................9

      I.    Search Warrant On Defendant's White Chevrolet Silverado ................................9

II.   LEGAL ARGUMENT ...............................................................................................10
      A.    Defendant Cannot Stipulate Away The Evidence Against Him When Such
            Stipulation Would Prevent The Government From Meeting Its Burden Of
            Persuasion Where Defendant Refuses To Concede Identity ................................10

      B.    The Evidence Is Admissible Under Rule 403 Despite The Proposed Stipulations,
            Particularly Where Defendant Is Not Stipulating To His Identity As The
            Perpetrator Of The Crimes...............................................................................12

            1.    Rule 403 Does Not Bar Incriminating Evidence Merely Because it is
                  Disturbing or has an Emotional Impact ....................................................12

            2.    What Defendant Construes as Non-identity Evidence is Actually Evidence
                  that Will Establish the Perpetrator's Identity............................................13

            3.    Rule 403 Does Not Bar the Admission of the Evidence Defendant
                  Construes as Non-identity Evidence.........................................................15

      C.    The Evidence The United States Seeks To Present Is Direct Evidence And/Or
            Inextricably Intertwined With The Charged Offenses............................................15

            1.    Elements of the Charged Crimes ..............................................................16

            2.    The Evidence Proposed to be Excluded by Defendant is Direct Evidence
                  that Establishes the Elements of the Crimes Charged and is Inextricably
                  Intertwined with Evidence of the Charged Crimes....................................17

      D.     Alternatively, The Evidence Is Admissible Under
            F.R.E. 404(b), 414, and 403 ...................................................................................19

           1.     The Contested Evidence is Admissible Under Rule 404(b) ......................19

           2.     The Contested Evidence is Admissible Under Rule 414 ..........................21

           3.     Rule 403 Weighs in Favor of the Government With Regard to Any
               Evidence Admitted Under Rules 404(b) and 414. ....................................21

III.    CONCLUSION..............................................................................................................22

## TABLE OF AUTHORITIES

**Federal Cases**

*Chatwin v. United States,*
    326 U.S. 455 (1946)................................................................................. 17

*Old Chief v. United States,*
    519 U.S. 172 (1997)........................................................................... 10, 11

*Sandoval v. Hill,*
    2013 WL 8364707, at *6 (C.D. Cal. 2013).............................................. 13

*United States v. Booth,*
    309 F.3d 566 (9th Cir. 2002.................................................................... 18

*United States v. Chea,*
    231 F.3d 531 (9th Cir. 2000) .................................................................. 20

*United States v. Curtin,*
    489 F.3d 935 (9th Cir. 2007) (en banc) ................................................. 19

*United States v. Ganoe,*
    538 F.3d 1117, 1124 (9th Cir. 2008), ....................................... 11, 12, 22

*United States v. Izatt,*
    480 Fed. Appx. 447, 450 (9th Cir. May 10, 2012) ....................... 20

*United States v. Kapp,*
    419 F.3d 666 (7th Cir. 2005) ........................................................... 12, 22

*United States v. Keith,*
    440 Fed. Appx. 503, 507 (7th Cir. 2011) ....................................... 12

*United States v. Kowaleski,*
    2015 WL 545372, at *1 (9th Cir. Feb. 11, 2015) .......................... 11

*United States v. Lemay,*
    260 F.3d 1018, 1028 (9th Cir. 2001) ............................................. 21

*United States v. Manning,*
    56 F.3d 1188 (9th Cir. 1995) ........................................................................ 20

*United States v. McInnis,*
    976 F.2d 1226, 1231 -1232 (9th Cir. 1992) ...................................... 12, 15

*United States v. Mellies,*
    329 Fed. Appx. 592, 600-01 (6th Cir. 2009) ................................... 12

*United States v. Moncini,*
    882 F.2d 401 (9th Cir. 1989) ............................................................ 18

*United States v. Parker,*
    267 F.3d 839, 846 -848 (8th Cir. 2001) ........................................... 16

*United States v. Polouizzi,*
    564 F.3d 142 (2d Cir. 2009) ............................................................. 12

*United States v. Redmond,*
    803 F.2d 438, 438 -440 (9th Cir. 1986) ........................................... 17

*United States v. Salcido,*
    506 F.3d 729 (9th Cir. 2007) ............................................................ 18

*United States v. Sheldon,*
    755 F.3d 1047 (9th Cir. 2014) .......................................................... 16

*United States v. Soliman,*
    813 F.2d 277 (9th Cir. 1987) ............................................................ 19

*United States v. Tsinnijinnie,*
    91 F.3d 1285, 1289 (9th Cir. 1996) ................................................. 20

*United States v. Turchen,*
    187 F.3d 735, 740 (7th Cir.1999) .................................................... 16

*United States v. Verduzco,*
    373 F.3d 1022 (9th Cir. 2004) .......................................................... 20

*United States v. Wesson,*
　　779 F.2d 1443 (9th Cir. 1986) ....................................................................... 17

*United States v. Williams,*
　　291 F.3d 1180, 1189 (9th Cir.2002) ............................................................... 19

**Federal Statues**
18 U.S.C. Chapter 110 ........................................................................................ 2, 21

18 U.S.C. § 1201(a) ............................................................................................. 17

18 U.S.C. § 1201(a)(1) and (g) .......................................................................... 16

18 U.S.C. § 1201(a) and (g) ............................................................................... 17

18 U.S.C. § 2251(a) ........................................................................................ 16, 18

18 U.S.C. § 2256 ................................................................................................. 16

**Federal Rules of Evidence**
Federal Rule of Evidence 403 ............................................... 10,11,12, 15, 18, 19, 21

Federal Rules of Evidence 404(b) .......................................... 2, 10, 19, 20, 21, 22

Federal Rules of Evidence 414(a), (d)(2)(B) .............................................. 21

Federal Rule of Evidence 414(d)(2)(B) ....................................................... 2

BENJAMIN B. WAGNER
United States Attorney
PATRICK R. DELAHUNTY
MEGAN A. S. RICHARDS
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone:  (559) 497-4000
Facsimile:   (559) 497-4099

MAUREEN C. CAIN
U.S. Department of Justice
Child Exploitation & Obscenity
1400 New York Ave, Suite 600
Washington, D.C. 20530
Telephone: (202) 616-1685
Facsimile: (202) 514-1793

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  1:11-CR-00324 AWI |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE REGARDING STIPULATIONS AND "OTHER ACTS" |
| v. | |
| SHAWN JOSEPH McCORMACK, | |
| Defendants. | DATE: March 16, 2015 TIME: 10:00 a.m. COURT: Hon. Anthony W. Ishii |

On March 5, 2015, Defendant Shawn McCormack (Defendant) filed a response to the Government's motions in limine and did not oppose any of the Government's motions.   In that same response, Defendant also included his own motions in limine, raising two issues.  First, Defendant attempts to exclude and "stipulate away" the Government's case in chief, with the exception that he will not stipulate to the identity of the person that engaged in the kidnapping and production of child pornography in the Second Superseding Indictment.  Defendant claims that any evidence outside of identity evidence is "unnecessary, cumulative, and if not outright irrelevant, extremely prejudicial."

1  ECF No. 46, Br. at p. 4.  Second, Defendant also seeks to bar any "other act" evidence that may be

2  proffered by the Government under Rule 404(b).

3      Defendant's attempts to stipulate away the Government's case in chief should be rejected.  As

4  the case law demonstrates, the United States is not required to "stipulate away" its case in chief,

5  particularly in this instance when all of the evidence the Government seeks to introduce is ultimately

6  part and parcel to the identity of the perpetrator of the charged offenses.  As to Defendant's "other acts"

7  argument, the evidence the Government seeks to introduce is not evidence of other acts, rather, it is

8  direct evidence or is inextricably intertwined with the charged offenses.  If, however, Defendant

9  disagrees, the United States provides notice herein under Federal Rules of Evidence 404(b) and 414 and

10  submits that such evidence goes to the Defendant's intent, identity, motive, opportunity, preparation,

11  plan, knowledge, and absence of mistake or lack of accident.  Additionally, such evidence relates to

12  child pornography offenses under 18 U.S.C. Chapter 110, as referenced in Federal Rule of Evidence

13  414(d)(2)(B).  Accordingly, all evidence the Government seeks to introduce should be admitted.

## I.      FACTUAL BACKGROUND

15      An overview of the investigations in this case illustrates the import of the evidence that

16  Defendant seeks to exclude.

### A.      Toronto Police Department's Initial Undercover Investigation

18      On or about April 27, 2010, while working undercover, Detective Paul Krawczyk of the Toronto

19  Police Department was on Gigatribe, a peer-to-peer file-sharing website known by law enforcement

20  officers to be used for sharing child pornography.  While on that website, Detective Krawczyk accepted

21  a friend request from a user named "toddlers."  Several weeks later, on June 5, 2010, both Detective

22  Krawczyk and "toddlers" were on the Gigatribe website at the same time, allowing Krawczyk to chat

23  with "toddlers" and also see his shared folders (which contained files "toddlers" was sharing on

24  Gigatribe).  Initially, "toddlers" was sharing three named folders on Gigatribe that contained child

25  pornography:  "pics," "toddlers," and "vids."  While chatting, "toddlers" informed Detective Krawczyk

26  he had "private[s]," indicating that he had child pornography images that he had created, and asserted

27  that they were "my friend's son I take at nights."  After informing Detective Krawczyk he had

28  "privates," "toddlers" made an additional folder available called "New Folder."  "[T]oddlers" further

stated that the child was two years old and "when I visit I take him out late in the night to a hotel." He also informed Detective Krawczyk that the boy's name was "B."[1]  "[T]oddlers" also further asserted that "B's" parents were unaware of his activities and admitted it was risky.  Detective Krawczyk downloaded child pornography from the various folders being shared by "toddlers" and captured screenshots of the Gigatribe chat session, including the images and videos being made available in the "New Folder."[2]  Law enforcement was later able to identify the victim in the images made available in the "New Folder" and learned that the child's name was in fact "B."

Detective Krawczyk determined that the IP address used by "toddlers" was in the Colorado Springs, Colorado area.  He sent a lead to the United States Department of Homeland Security (DHS).

**B.     Toronto Lead Was Worked By DHS and Colorado Springs Police Department**

DHS determined the subscriber information for the IP address used by "toddlers":  Shawn Mccormack [sic], at 14275 Vessey Circle, Black Forest, Colorado; user id = mcshawn1068.  The internet service provider's business records showed the account was established June 4, 2010—the day before Officer Krawyck's chat with "toddlers."

Officers obtained a search warrant for the house at 14275 Vessey Circle, and seized a Toshiba laptop from the master bedroom.  Colorado Springs Detective Bryan Rogers analyzed the laptop.

The laptop was registered to "Shawn" and contained two user accounts: "Shawn" and "Yup." Detective Rogers found internet history search terms in both the Shawn and Yup accounts that indicated the same person was using both accounts, including searches on Craigslist for women with kids in both the Bakersfield, California area, along with the Colorado area.

In the "Yup" account, Detective Rogers located child pornography images associated with "B" that were ultimately charged in this case.  Specifically, three different series or scenes were found on McCormack's Toshiba laptop that involve "B" were charged in the indictment.  In each, the

---

[1] For purposes of public court filings, the United States will refer to the minor victims' initials only.  In this instance, we are only referring to the first initial of the male victim's first name.  In the referenced chat, however, "toddlers" used the victim's full name.

[2] Although Detective Krawczyk downloaded numerous videos of child pornography separate and apart from the two victims involved in this case, the United States will not be playing videos unrelated to the two victims during the trial. At most, the United States will show the thumbnail images of child pornography seen in the various folders and captured by Detective Krawczyk's screenshots while he testifies to tell the story.

perpetrator's face is never seen.  In one scene, "B" appears to be in a motel bedroom with a swirl carpet (hereinafter, the "Swirl Carpet" series), and later in a motel bathroom.  In some visual depictions, the perpetrator's head is seen and he is wearing a black face mask with holes cut out for his eyes.  At times, "B's" arms and legs are taped-up during the abuse.  In one video from the Swirl Carpet series, a Family Matters television show episode and commercial by Pepperidge Farms are heard in the background.  In other videos in the series, the perpetrator holds his erect genitals near "B's" face and then proceeds to urinate on him while in the motel bathroom.

There were additional images in the Yup account on McCormack's laptop that show "B" being sexually exploited.  In some, "B" is being exploited while lying in his crib and in others, while he is outdoors.  In each set of scenes, the perpetrator is a pale, Caucasian man

Detective Rogers also located evidence of Gigatribe being used in the "Yup" account on McCormack's Toshiba laptop.  Indeed, Detective Rogers found  the exact chat between "toddlers" and Detective Krawczyk on the laptop, along with additional chats between "toddlers" and other Gigatribe users in which "toddlers" admits to sneaking out a 3-year old girl and 1-year old boy at night time for purposes of sexual abuse.  Moreover, he admits to being the "mask guy," urinating on "B," and sexually abusing "B."  Other Gigatribe chats were found on McCormack's laptop in which "toddlers" provided his cell phone number—which was the same cell phone number used by McCormack at that point in time—and the email address of toddlers24@yahoo.com.

**C.     In a Separate Yet Simultaneous Investigation, DHS in Boston and California Work To Identify The Perpetrator, Minor Victim "B" And The Location Of The Sexual Abuse From The Swirl Carpet Series**

In an unrelated, simultaneous investigation involving a Massachusetts distributor of child pornography, law enforcement was ultimately able to identify the victim known as "B" from the "Swirl Carpet" series.  Specifically, on or about November 10, 2010, HSI agents in Boston executed a search warrant on Robert Diduca's residence after he was receiving and distributing child pornography through an online forum.  While conducting forensic analysis of Diduca's computer, they also found images and videos from the "Swirl Carpet" series.  HSI in Boston worked to determine where the series was produced, who produced it, and the identity of the victim.

///

1    One video in the Swirl Carpet series videos depicts the rape and sexual abuse of a male toddler

2  while his legs and arms were bound by electrical tape.  In the background of the video, a television plays

3  an episode of Family Matters (which featured the memorable character named Steve Urkel).  Agents

4  determined that the episode was "Cheers Looking at You Kid" by doing Google searches of the audible

5  dialogue.  Further, a specific Pepperidge Farm chocolate commercial is also heard during a commercial

6  break from the Family Matters episode.  HSI subpoenaed both Pepperidge Farms and Viacom to

7  determine when the episode and commercial had aired.  Agents determined they had aired on the same

8  day only once: March 28, 2009 around 3am EST.

9    Additionally, the agents worked to determine where the Swirl Carpet series was produced.  To

10  do so, they focused on clues provided in the videos: a unique granite vanity counter, a swirl-patterned

11  carpet, a patterned bedspread with an orange blanket underneath, specific furniture, and the layout of the

12  room where the abuse occurred.  Through a variety of internet searches looking at motel rooms online

13  and grand jury subpoena returns, agents were able to narrow their search down to the California Best Inn

14  in Bakersfield California as the place where the Swirl Carpet series was recorded.  Thereafter, DHS

15  Agent Veronica Pike in Bakersfield, California, obtained records of all guests from the night of March

16  27, 2009 through March 28th, 2009 from Ramish Vaghasia, who in 2009 co-owned the hotel.

17    SA Pike was also given a screen shot of a granite bathroom-counter vanity curtain seen in the

18  Swirl Carpet series.  On September 13, 2011, SA Pike went to the California Best Inn again and asked

19  permission to photograph rooms in the hotel, focusing on the granite vanity curtain.  Based on the visual

20  depictions in the Swirl Carpet series, agents knew that the room in the video had a single bed, either a

21  queen or king sized bed, and the bed's headboard abutted the right hand wall when one entered through

22  the doorway.  SA Pike was shown all the rooms that matched this description by Mr. Vaghasia.  When

23  agents were shown Room 221, they saw a single queen bed matching the location in the video, along

24  with a granite counter vanity curtain that matched the one in the Swirl Carpet series.  SA Pike took

25  photographs that confirm the match.

26    After identifying the room depicted in Swirl Carpet series and the date of one of the videos in the

27  series, law enforcement officers worked to determine who stayed in Room 221 on March 28, 2009.  The

28  only individual to have rented Room 221 in the weeks surrounding March 27, 2009 was Shawn

McCormack.  The records list him as having checked in on March 28, 2009.  They also show a receipt listing McCormack's name and the number of guests occupying the room—listed as 2.  Additionally, the records show a copy of Shawn McCormack's Arizona driver's license.  This conduct also gives rise to Count 5, charging McCormack with kidnapping "B" on this date.

SA Pike then ran a TECS check on Shawn McCormack and learned he had been recently arrested in July 2011 for child pornography distribution offenses in Colorado (related to the Gigatribe investigation).  A criminal history check also revealed that he had been arrested for willful cruelty to a child by Bakersfield Police on November 6, 2009.  SA Pike obtained information on the willful cruelty of a child incident (described below), which ultimately led to her identifying "B's" first and last name, where "B" lived, along with confirming Defendant's access to "B" and his sister "E."

### D.  November 6, 2009 Child Endangerment/Willful Cruelty to Child Incident

On November 6, 2009, Defendant abducted "B" in the middle of the night from his home in Bakersfield, California.  This abduction is charged in Count 6 of the Second Superseding Indictment.  That night, Bakersfield Police Department Officers Robert Robles and Ornelas were driving at night when they were flagged down by Mrs. "S" regarding her missing 2-year old son "B."  She was visibly distraught and had difficulty maintaining her composure.

Through the investigation, officers learned that Mr. "S" had come home late that night from work.  Upon coming home, Mr. "S" saw his 2-year old son asleep in his bedroom at 1:30 am and his friend McCormack asleep inside the living room.  McCormack was staying at Mr. and Mrs. "S's" because he was traveling for work and had requested to stay the night, which he had done before.  Mr. "S" then took a shower.  At about 1:40 am, Mr. "S" went into his children's bedroom and saw that "B" was no longer in his room and McCormack was not inside the residence.  When Mrs. "S" learned her child was missing, she ran out to the backyard and to the alley to try to find her missing child.  Mr. "S" went to the front yard and noticed that McCormack's vehicle, a 1999 White Chevrolet Silverado, was no longer in the front yard.  While talking with police, Mr. "S" provided them McCormack's cell phone.  When a call was made to McCormack, he claimed that he had just left the residence to go to a convenience store to get something to drink and had brought "B" along for the ride.

///

After the phone call, Officer Robles saw McCormack traveling toward the residence.  Officer Robles walked up to the driver's side of the vehicle and saw "B" sitting on top of his knees on the front passenger seat.  He was not wearing a seat belt nor was he harnessed in a child safety seat.  Officer Robles also observed that "B" was only wearing a diaper and nothing else.

McCormack was ultimately arrested for child endangerment.  He told police he woke up while sleeping in the living room and decided he wanted to go to the store to get something to drink.  McCormack claimed that while walking out the door, he observed "B" walking toward him.  McCormack said he made a stupid decision by taking "B" with him for the ride, however, he did not really think about it at the time.  McCormack claimed to put a seat belt on "B" and once they arrived at the convenience store, he left "B" inside the car to stay warm while he bought a few small items and returned to the car.  While supposedly returning to the residence, McCormack stated he got a frantic call regarding "B's" whereabouts.  McCormack said he made a poor judgment decision and his only intention was to take "B" for a ride because he had woke up at such a late hour.

Mr. and Mrs. S did not give permission to take "B" out in the middle of the night.

### E.     Identification Of "B" and "E"

Having learned about McCormack's encounter with the Bakersfield police and the "S" family, SA Pike interviewed the "S" family in September, 2011 in Bakersfield, California.  SA Pike brought sanitized photos of the male toddler from the "Swirl Carpet" series for identification.  Mrs. "S" identified the male toddler as her son "B."  Later investigation into Defendant's email accounts revealed a little girl being sexually abused as well.  Mrs. "S" reviewed the sanitized images of the little girl and identified her as her daughter, and "B's" sister, "E."

### F.     Arrest of McCormack on Federal Charges and Additional Search Warrants

On September 6, 2011, HSI and the Colorado Springs Police Department went to Defendant's residence at 14275 Vessey Circle to arrest him for production of child pornography involving "B," based on a criminal complaint issued out of the Eastern District of California.  While at the residence, agents saw digital devices in the house and learned through Defendant's brother that McCormack was using them.  While law enforcement was at the residence, McCormack arrived and was arrested.

/ / /

Agents obtained two search warrants on the residence to search and seize items of clothing seen in the visual depictions from the Swirl Carpet series and elsewhere, along with the digital devices that McCormack was again using.[3]   Agents recovered several black balaclavas/face masks that appear to match the mask worn by the perpetrator during the sexual abuse of "B" in the Swirl Carpet series. Agents also recovered a cloth belt with a silver buckle (resembling an airport seatbelt) from the residence, which further matches what the offender wore in some depictions.   Additionally, agents recovered a grey t-shirt, a red t-shirt, and various boxer shorts that resemble the articles of clothing seen in the various images.

**G.     Mirandized, Videotaped Interview of Defendant**

After being arrested on federal charges for production of child pornography involving "B," Defendant agreed to give a videotaped, Mirandized interview.   In the video-taped recording, Defendant admitted to knowing the "S" family and staying at their residence when he was coming in from out of state.   He admitted to knowing "B" and "B's" sister but he could not remember the sister's name.   He denied ever spending time alone with the kids, and he denied sexually abusing children or producing child pornography.   When asked about the November 2009 incident where he took "B" without the parents' permission, he claimed that Mr. "S" "kind of vaguely knew about it." Defendant further claimed he got snacks and candy while taking "B" out and wanted someone to come along for the ride.

Defendant also admitted to staying at a few motels in California, including Bakersfield.   He said he had been to so many during the years he couldn't remember the names of the motels.   When asked if he ever took "B" to the motels, Defendant denied it.   Law enforcement confronted him at one point by stating they knew he was at the California Best Inn with "B" and the room was under his name.   In response Defendant claimed he had no idea why the hotel was in his name.

Defendant also noted that his younger brother Scott knows Mr. and Mrs. "S." Defendant said Scott may have been with him twice during the visits to the "S" house.   Later in the interview, law

/ / /

---

[3] Child pornography was found on these devices as well.  The United States does not intend to introduce any child pornography found on any digital device at Defendant's residence separate and apart from the charged victims in this case.

enforcement told Defendant they know he was dealing with demons and asked, "What are your demons?" Defendant replied: "All of this…Everything we've been talking about."[4]

### H.   Search Warrant On Email Accounts Tied To Defendant

In 2010 and 2011, Detective Romine executed search warrants on email accounts tied to Defendant, namely toddlers24@yahoo.com and Shawns525@yahoo.com.  When reviewing emails from the toddlers24@yahoo.com account, Detective Romine found two emails dated December 2 and December 5, 2008 sent from toddlers24 to others.  Attached to the two emails were images of "E" being sexually abused by a pale, Caucasian man in the backseat of a vehicle.  Detective Romine also recovered an email titled, "Gigatribe Password Retrieved" and the email body noted that the password was "1silverado."  Detective Romine also recovered emails where toddlers24@yahoo.com told his contacts to start sending him email at shawns525@yahoo.com.

When reviewing the email search warrant return from the shawns525@yahoo.com account, Detective Romine found that the account was registered to Shawn McCormack and found emails pertinent to the identity of the user.  For example, Detective Romine recovered emails where Defendant inquired about his residence on Vessey Circle.  Detective Rogers also recovered emails where the user made statements directly related to the victims in this case and the sexually explicit conduct he engaged in.  For example, in one email from May 2011 shawns525 states that he has images of "a 2 yr. old and a 8 month old being peed on."  In another email exchange from May 2011, an unidentified user states in part, "I have been looking at the picture you have shared with me" and attached PICT0307, a charged pornographic image of "B."  After the user discusses his diaper fetish with Shawns525, Shawns525 tells the user that "I'll even do custom photos for you."

### I.   Search Warrant On Defendant's White Chevrolet Silverado

In 2011, Detective Romine obtained a search warrant to take photographs of Defendant's white Chevrolet Silverado.  The Silverado's seats appear to match the seats appearing in images of "E" being sexually abused in the back of a vehicle, distributed in the toddlers24@yahoo.com account.

---

[4] At the end of the interview, Defendant requested an attorney.  The United States will cut out that part of the video when playing the video for the jury and will instruct its witnesses to make no reference of the request in the government's case in chief.

## II.    LEGAL ARGUMENT

Defendant's motion should be denied for at least four reasons.  First, he should not be allowed to stipulate away all the evidence against him, thereby denying the Government an opportunity to meets its burden.  Second, contrary to his motion, Rule 403 does not bar the Government's evidence.  Third, Defendant misconstrues evidence as evidence of "other acts" when it is in fact direct evidence of the charged crimes or inextricably intertwined with them.  And fourth, the contested evidence is separately, and alternatively, admissible under Rules 404(b) and 414.

### A.    Defendant Cannot Stipulate Away The Evidence Against Him When Such Stipulation Would Prevent The Government From Meeting Its Burden Of Persuasion Where Defendant Refuses To Concede Identity

Defendant's attempts to stipulate away all of the evidence against him with the exception of identity should be rejected.  Specifically, Defendant states he will "stipulate that the ultimate facts, which prove the elements of each count, have been established" and such stipulation will include "the identity of the alleged victims, their ages, the fact that the videos and images depict the sexual exploitation of a minor, as well as a stipulation that the crime of kidnapping occurred on the dates alleged in Counts Five and Six." ECF No. 56 at p. 4.  This proposal should be rejected for several reasons.

First, it runs contrary to the case law and to a balancing of evidence and factors under Rule 403.  The Supreme Court's decision in *Old Chief v. United States* is instructive. 519 U.S. 172 (1997).  There, the United States Supreme Court considered whether the Government must stipulate to a defendant's prior conviction in a felon in possession of a firearm case.  In considering the issue, the Supreme Court held the "familiar, standard rule that the prosecution is entitled to prove its case by evidence of its own choice, or, more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." *Id* at pp. 186-87.  In permitting the government to put on its case, the Supreme Court concluded that the rules of evidence still apply, including the Rule 403 balancing test.  Under the particular facts of *Old Chief,* the Court held that the jury should not have heard the basis and details of Defendant's prior conviction, and instead should have been limited to hearing only the stipulated fact that the Defendant had a prior conviction without providing the basis or details.

The Court was careful to limit its holding to *Old Chief's* particular facts and circumstances, stating:

> In sum, the accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away rests on good sense. A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it. People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility for knowing that more could be said than they have heard. A convincing tale can be told with economy, but when economy becomes a break in the natural sequence of narrative evidence, an assurance that the missing link is really there is never more than second best.
>
> This recognition that the prosecution with its burden of persuasion needs evidentiary depth to tell a continuous story has, however, virtually no application when the point at issue is a defendant's legal status, dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against him.

*Id.* at pp.189-90.

Unlike *Old Chief*, Defendant's case and proposed stipulations have nothing to do with his legal status as a person previously convicted of a felon. Instead, this case involves kidnapping and the production of child pornography depicting two toddlers he had access to through his trips to Bakersfield and overnight stays at the "S" family residence. The evidence Defendant seeks to stipulate away is evidence that forms the basis of the criminal behavior against him. As such, the guidance of *Old Chief* is that the government is entitled to present its case in its entirety.

The Ninth Circuit is in accord. For example, on addressing defendants' attempts to "stipulate away" evidence in child pornography cases, the Ninth Circuit has routinely allowed the government to present its case, including the images of sexually explicit conduct. *See, e.g., United States v. Ganoe*, 538 F.3d 1117, 1124 (9th Cir. 2008), *cert. denied*, 129 S.Ct 2037 (2009) (affirming district court's F.R.E. 403 analysis and decision permitting jury to see the charged images of child pornography in a receipt and possession case, finding defendant's "proffered stipulation simply did not 'supply evidentiary value at least equivalent to what the Government's own evidence carried."); *United States v. Kowaleski*, 2015 WL 545372, at *1 (9th Cir. Feb. 11, 2015) (affirming district court's decision under F.R.E. 403 to allow jury to view child pornography despite the defendant's proposed stipulation because the images were relevant to proving the defendant's knowledge of the files, that he acted knowingly, and

1   to undercut the defendant's asserted theory that a roommate had used the defendant's computer to

2   download and store the files).  Other circuits have done the same.  *See, e.g., United States v. Polouizzi*,

3   564 F.3d 142, 153 (2d Cir. 2009) (affirming conviction where jury was shown, over defendant's

4   objection, each image or video charged in 23 count indictment, despite defendant's stipulation that he

5   had received and possessed child pornography); *United States v. Mellies*, 329 Fed. Appx. 592, 600-01

6   (6th Cir. 2009) (admission of 1,600 images out of 11,000 in defendant's collection not improper despite

7   defendant's admission that the images portrayed child pornography); *United States v. Keith*, 440 Fed.

8   Appx. 503, 507 (7th Cir. 2011) (affirming conviction where jury was shown, over defendant's objection,

9   thirty-two of the 4,242 child pornography images found on the defendant's computer, despite the

10   defendant's offer to stipulate that the images constituted child pornography).

**B.      The Evidence Is Admissible Under Rule 403 Despite The Proposed Stipulations, Particularly Where Defendant Is Not Stipulating To His Identity As The Perpetrator Of The Crimes**

13      Defendant asserts that Rule 403 supports the exclusion of non-identity related evidence.

14   Specifically, he asserts that any non-identity evidence will be unfairly prejudicial and cumulative.  Not

15   so.  Rule 403 weighs against Defendant's proposal and in favor of the Government.

       1.      Rule 403 Does Not Bar Incriminating Evidence Merely Because it is Disturbing or has an Emotional Impact

18      Under Federal Rule of Evidence 403, "the court may exclude relevant evidence if its probative

19   value is substantially outweighed by a danger of… unfair prejudice."  F.R.E. 403 (emphasis added).  As

20   the Ninth Circuit explained, "The trial judge's job is to avoid unfair prejudice.  The court is not required

21   to scrub the trial clean of all evidence that may have an emotional impact."  *Ganoe*, 538 F.3d at 1124

22   (*citing United States v. Morales-Aldahondo*, 524 U.S. 115, 120 (1st Cir. 2008)).  Incriminating,

23   disturbing evidence does not equate to unfair prejudice.  *See, e.g., United States v. Kapp*, 419 F.3d 666,

24   677 (7th Cir. 2005) ("Evidence is not to be excluded simply because it might be graphic or

25   disturbing…and if evidence is probative of an issue relevant to an element of the offense, it must be

26   admitted in all but the most extreme cases.")  Clearly, introducing identity evidence showing who

27   committed the charged crimes is highly probative and is an element the government must prove.  *See,*

28   *e.g., United States v. McInnis*, 976 F.2d 1226, 1231 -1232 (9th Cir. 1992) (admitting evidence of racial

slurs and swastikas in hate crime case to establish identity of the perpetrator, along with motive);

*Sandoval v. Hill*, 2013 WL 8364707, at *6 (C.D. Cal. 2013) ("As to identity, [the eye witness']

opportunity to view Petitioner in the prior robbery was highly probative of his ability to identify

Petitioner in the subsequent robbery.").

        2.      What Defendant Construes as Non-identity Evidence is Actually Evidence that Will Establish the Perpetrator's Identity

      In the charged images and videos, the defendant's face is never seen and the victims are toddlers at the time.  Thus, the United States intends to rely on numerous pieces of evidence to prove that Defendant is the perpetrator.  Thus, what Defendant construes as non-identity evidence is in fact necessary to establish identity.

      For example, Count 1of the Second Superseding Indictment involves two still images of "E" being sexually exploited and abused by a pale, Caucasian man in the backseat of a vehicle which matches the backseat of Defendant's Chevy Silverado.  The images were distributed to others via the toddlers24@yahoo.com account in December, 2008.  The jury needs to view the images to see, among other things, the vehicle seat and then compare the images to the pictures Detective Romine took of Defendant's Chevy Silverado.  If the jury believes that the car seat in the images involving "E" is from Defendant's Chevy Silverado, the jury is able to place the Defendant to the scene of the crime.

      The jury is also able to tie the images to Defendant through the distribution in the toddlers24@yahoo.com account which will be tied to Defendant through forensic evidence, along with email evidence in both the toddlers24 and shawns525 yahoo accounts. For example, the government seeks to introduce emails from toddlers24@yahoo.com telling others to email him at his other email address, shawns525@yahoo.com, an account registered in Defendant's first and last name.  Other emails in the shawns525@yahoo.com illustrate that McCormack used the account.  The account also contains communications related to the content in the charged images, including specific references to instances of sexual abuse seen in the images.  All of this evidence goes to identity of the perpetrator and cannot be stipulated away without the government losing its ability to persuade the jury that McCormack committed the crimes charged.

///

Count 2 involves four still images showing "B" asleep in his crib while a Caucasian male wearing a red t-shirt places his erect penis near "B"'s head.    The red t-shirt is similar to the shirt recovered by agents from Defendant's house.  The images were made available on Gigatribe by "toddlers" and also found on Defendant's Toshiba laptop in the Yup account.  Further, the jury needs to see the images to make the connections with the clothing items seized from Defendant's house and to know that the images were found in various places connected to Defendant such as his computer and Gigatribe account.

Count 3 involves three videos and one image from the "Swirl Carpet Series."  Each video is less than five minutes long.  The videos show a pale, Caucasian male sexually abusing "B" through acts of penetration, oral sex, the lascivious exhibition of B's and the perpetrator's genitals, and the sadistic and masochistic conduct of urination on "B."  The Swirl Carpet series contains additional identity evidence through the face mask and the clothing worn by the perpetrator, items which were seized from Defendant's residence.  The videos and images also place the Defendant at that exact motel (the California Best Inn) through the carpet, bedspread, bathroom appearance, and granite counter seen in the videos and image.  The audio from the videos also ties Defendant to the scene of the crime on the date of the crime through the Family Matters television show and Pepperidge Farm commercial heard in the background.  The records and witness testimony will reveal that the television show and commercial played on March 28, 2009, which matches up to the date when Defendant stayed at the California Best Inn in a room that looks identical to the room seen in the videos and images.  Additionally, the acts of taping up the toddler and urinating on him while wearing a black mask are consistent with the statements made by "toddlers" in the Gigatribe chats found on Defendant's laptop, allowing the jury to find that Defendant is the one making such admissions to his conduct and is the perpetrator of the charged offenses.  Again, the jury should be allowed to see the images to tie together all of the evidence of identity.

Count 4 contains four still images of "B" laying outside on grass.  In three images, an adult male's erect penis is seen near "B," along with some unique clothing worn by the perpetrator, including a cloth belt with a silver buckle.  Two images also show the lascivious exhibition of "B"'s nude genitals. The items of clothing seen in the images worn by the perpetrator were recovered from Defendant's

residence.  In order to make the connections between the clothing seen in the images and the Defendant, the jury should view the images.  The images were also found on Defendant's laptop in the Yup account.

Count 5 relates to Defendant kidnapping "B" for purposes of making the Swirl Carpet series at the California Best Inn motel in March 2009.  Count 6 relates to the kidnapping on November 6, 2009 that Police Officer Robles, Mr. "S," and Mrs. "S" will testify about (in addition to other matters).  The kidnapping charges largely "piggy-back" off of the evidence from the production charges in terms of the elements and the identity of the perpetrator.

> 3.    Rule 403 Does Not Bar the Admission of the Evidence Defendant Construes as Non-identity Evidence

The government's evidence is highly probative of the defendant's identity as the perpetrator, along with other elements of the offenses.  It is not cumulative, and simply because it establishes his identity, it is not unfairly prejudicial.  Thus, because Defendant refuses to stipulate to his identity as the perpetrator for each charged offense, his proposed stipulations are an inadequate substitute for the Government's evidence that it intends to present in its case in chief. *See, e.g., McInnis*, 976 F.2d at 1231 -1232 (admitting evidence to establish identity); *Hill*, 2013 WL 8364707, at *6 (same).  Rule 403 does not bar its admission.

**C.    The Evidence The United States Seeks To Present Is Direct Evidence And/Or Inextricably Intertwined With The Charged Offenses**

Defendant seeks to bar "other act" evidence, including "his possession or distribution of other images of videos…as well as any evidence of communications with other individuals which do not relate to the videos or images referred to in the indictment."  ECF No. 56 at p. 5.  He also seeks to bar any evidence that "defendant visited websites that may be used to acquire child pornography or engaged in generalized discussions of that topic."  *Id.*  As outlined in the factual background section above, the United States believes that the evidence it intends to introduce is direct evidence of the crimes charged—not "other acts"—and is necessary to meet its burden of production on each of the elements of the charged crimes.  Accordingly, his second proposal should also be rejected.

///

///

1.    Elements of the Charged Crimes

In order to prove production of child pornography, the United States will have to prove beyond a reasonable doubt the following:

(1)    At the time, the victim was under the age of eighteen years; AND

(2)    the defendant employed, used, persuaded, or coerced the victim to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; AND

(3)(i)   the defendant knew or had reason to know that the visual depiction would be mailed or transported across state lines or in foreign commerce or (ii) the visual depiction was produced using materials that had been mailed, shipped, or transported across state lines or in foreign commerce or (iii) the visual depiction was mailed or actually transported across state lines or in foreign commerce.

18 U.S.C. § 2251(a); *see also United States v. Sheldon*, 755 F.3d 1047, 1049-50 (9th Cir. 2014). "Sexually explicit conduct" means actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital, oral-anal, whether between persons of the same or opposite sex; bestiality, masturbation, sadistic or masochistic abuse, lascivious exhibition of the genitals or pubic area of any person.  18 U.S.C. § 2256.  Courts have held that urinating on a child constitutes sadistic and masochistic abuse. *See, e.g., United States v. Turchen*, 187 F.3d 735, 740 (7th Cir.1999) (holding computer image of men urinating on girl depicted sadistic conduct within Guidelines); *United States v. Parker*, 267 F.3d 839, 846 -848 (8th Cir. 2001) (same).

To be convicted of kidnapping under 18 U.S.C. § 1201(a)(1) and (g), the government must prove that Defendant did the following with minor victim "B":

(1)    the Defendant knowingly and willfully kidnapped, seized, confined, inveigled, decoyed, abducted, or carried away the victim;

(2)    the Defendant kidnapped, seized, confined, inveigled, decoyed, abducted, or carried away the victim with the intent to collect a ransom, reward, or other benefit and held the victim for that reason; and

(3)    (i)    the victim was willfully transported in interstate or foreign commerce; or
(ii)    the offender travels in interstate or foreign commerce; or
(iii)    the offender uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense; and

(4)    the victim of the offense has not attained the age of 18 years; and

(5)    the offender has attained the age of eighteen years old; and

(6)    the offender is not a parent, grandparent, brother, sister, aunt, uncle, or an individual having legal custody of the victim.

*See* 18 U.S.C. § 1201(a) and (g).

With regard to the first element of kidnapping, the terms "kidnapped, seized, confined, inveigled, decoyed, abducted, or carried away" are not defined under the Code, thus, they are given their plain meanings. In *Chatwin v. United States*, 326 U.S. 455, 464 (1946), the United States Supreme Court stated "the very essence of the crime of kidnapping" is "the involuntariness of the seizure and detention." If "the victim is of such an age or mental state as to be incapable of having a recognized will, the confinement then must be against the will of the parents or legal guardian of the victim." Chatwin, 326 U.S. at 460.

As for the second element of the offense, courts have repeatedly held that rape, sexual assault, and other sexual gratification constitutes a "reward or otherwise" under 18 U.S.C. § 1201(a). *See, e.g., United States v. Redmond*, 803 F.2d 438, 438 -440 (9th Cir. 1986) (sustaining kidnapping conviction and stating, "[t]he evidence shows that Redmond confined the victim, by means of handcuffs and otherwise, while holding her for his sexual gratification and transporting her across state lines"); *United States v. Wesson*, 779 F.2d 1443, 1444 (9th Cir. 1986) (finding sufficient evidence at trial that Defendant kidnapped victim for purposes of sexual gratification to sustain conviction under 18 U.S.C. § 1201).

2.    The Evidence Proposed to be Excluded by Defendant is Direct Evidence that Establishes the Elements of the Crimes Charged and is Inextricably Intertwined with Evidence of the Charged Crimes

Here, as described above, the evidence that Defendant seeks to exclude is direct evidence of his production of child pornography and kidnapping. For example, the United States intends to offer into evidence no more than five Gigatribe chats found on Defendant's laptop that constitute admissions by the defendant on what he did with "B" and "E." Specifically, the Gigatribe chats found on his laptop show "toddlers" sharing images of "B" from his folders with others, including the undercover officer Detective Krawczyk. The chats also show "[t]oddlers" referring to "B" by his full first name, referring

to a sister of "B" who is slightly older, and discussing sexually abusing both.  He further discusses being "the mask guy," taking his friend's son to a hotel, urinating on him, and doing "anal" with the little boy, along with other acts of sexual abuse on him.  The United States also intends to offer email evidence showing distribution of the charged images and subsequent discussion by Defendant of the charged images.  For example, in one email shawns525@yahoo.com states that he has images of "a 2 yr old and a 8 month old being peed on."  In another email exchange, an unidentified user states to shawns525@yahoo.com, in part, "I have been looking at the picture you have shared with me" and attached PICT0307, a charged image of "B."  The user further discusses his diaper fetish and desire to meet up with shawns525 in Las Vegas to live out their fantasy with children.  In response, shawns525@yahoo.com replies that he is serious about meeting up in Vegas and that "I'll even do custom photos for you."  Evidence from the Gigatribe chats and email accounts is direct evidence of the charged offenses because they constitute admissions by Defendant of sexually abusing the two victims and producing child pornography through "custom" photos.  *See, e.g., United States v. Salcido*, 506 F.3d 729, 735 (9th Cir. 2007) (affirming admission of sexually explicit chat logs to show knowledge of possession and receipt in a child pornography case).

Additionally, Defendant's sharing and distributing the charged images can establish the interstate commerce prong of 18 U.S.C. § 2251(a), making evidence of such distribution direct evidence of the charges.  *See, e.g., United States v. Booth*, 309 F.3d 566, 572 (9th Cir. 2002) ("Where a statute specifies two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count and proof of any one of those conjunctively charged acts may establish guilt."); *United States v. Moncini*, 882 F.2d 401, 403 (9th Cir. 1989) ("We agree with the government that Moncini's mailing of child pornography was a continuing offense, so that part of the offense was committed in the United States as his letters traveled through the mail and were delivered to their destination, and reject Moncini's argument that the crime was complete at the time the letter was deposited in the mail in Italy.").

Moreover, the similar internet history searches on the Toshiba laptop, where the user of the "Shawn" account and "Yup" account engaged in similar internet searches around the same time, is also direct evidence of the identity of the perpetrator for the charged offenses.  For example, some searches

show the user of both the Shawn account and Yup account were on Craigslist close in time searching for "women + kids" in both Bakersfield, CA and Colorado.  Similarly, the Government may establish identity by linking Defendant to the Yup account where most of the charged images were located and where the Gigatribe chats were found.  By showing that  the users of the Shawn and Yup account engaged in similar searches on the internet close in time, the jury can infer that Defendant was the user of both accounts, and in turn the jury can attribute the Gigatribe admissions to him, along with the charged images.[5]

In addition to being direct evidence of the charges in this case, the above evidence is inextricably intertwined with the other evidence in this case.  Evidence of other unlawful conduct is admissible if it is "inextricably intertwined" with evidence concerning the crime charged.  *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987).  And, evidence is "inextricably intertwined" if it constitutes a part of the transaction that forms the basis for the criminal charge or is necessary to permit the government to offer a coherent story regarding the crime.  *See United States v. Williams*, 291 F.3d 1180, 1189 (9th Cir.2002) *overruled on other grounds by United States v. Gonzales*, 506 F.3d 940 (9th Cir. 2007).  Here, the above evidence is necessary to permit the Government to offer a coherent story of the crimes and, in particular, who committed the crimes.

**D.**    **Alternatively, The Evidence Is Admissible Under F.R.E. 404(b), 414,  and 403**

1.    The Contested Evidence is Admissible Under Rule 404(b)

Even if Defendant disagrees or this Court determines any of the above-described evidence is not direct evidence or is inextricably intertwined, the evidence should be admitted under Rules 404(b) and 414, and the government hereby provides notice to Defendant (in addition to the expert notice previously circulated regarding several of the above acts).

Rule 404(b) "is a rule of inclusion — not exclusion."  *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007) (en banc).  It excludes the admission of "other crimes, wrongs, or acts" (i.e., uncharged bad acts) to prove action in conformity therewith, but it allows for such evidence as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Fed. R.

---

[5] The United States' intent to use such evidence was also discussed in an expert notice sent to Defendant prior to the filing of his brief.

1  Evid. 404(b).  "Acts" under 404(b) need not be bad acts, so long as the acts are "relevant in such a way

2  as to avoid being nothing more than character or propensity evidence." *Curtain*, 489 F.3d at 944.

3  Furthermore, other crimes, wrongs, or acts under 404(b) can occur before or after the charged criminal

4  conduct. *See, e.g., United States v. Chea*, 231 F.3d 531, 534 (9th Cir. 2000).   Evidence can be admitted

5  under Rule 404(b) if four conditions are met.  First, the evidence proves a material point; second, the

6  other act is not too remote in time; third, the evidence is sufficient to show that the defendant committed

7  the other act; and fourth, that the act is similar to the offense charged, in cases where knowledge and

8  intent are at issue. *United States v. Verduzco*, 373 F.3d 1022, 1027 (9th Cir. 2004).

9          All four conditions are met here.  First, the evidence relates to material points – i.e., it relates to

10  all of the elements of the charged offenses and the identity of the defendant as the perpetrator, as

11  discussed above.  The evidence also relates to knowledge, motive, opportunity, intent, preparation, plan,

12  absence of mistake, and lack of accident.  Second, the acts largely relate to the same time period charged

13  in the indictment, which is January 2007 to July 2010.  With respect to the May, 2011 emails where

14  shawns525 stated he'll do "custom" photos and he has images involving urination on an 8-month old

15  and a 2-year old, those communications occurred shortly before his arrest on the federal charges and are

16  only eight months outside of the charged time-frame.   The Ninth Circuit has permitted other crimes,

17  wrongs, and acts far more remote in time. *See, e.g., United States v. Izatt*, 480 Fed. Appx. 447, 450 (9th

18  Cir. May 10, 2012) (admitting similar conviction in drug case eight years outside the charged offenses

19  under 404(b)); *United States v. Tsinnijinnie*, 91 F.3d 1285, 1289 (9th Cir. 1996) (admitting evidence of

20  physical and sexual abuse that occurred two years outside of the charged sexual abuse offenses); *United

21  States v. Manning*, 56 F.3d 1188, 1197 (9th Cir. 1995) (admitting conviction from eight years outside of

22  charged conduct to show defendant's knowledge regarding explosive devices).   Third, when looking at

23  all of the evidence, it is sufficient to show that Defendant was the person committing the acts, as

24  described above.  Fourth, the acts also are similar to the offenses charged in that they relate to the

25  comments and distribution of the charged images and tie Defendant to the crime scenes, also as

26  described above.  The acts also show who was behind the computer and email accounts where

27  incriminating statements about who produced the images were made, along with where several charged

28  images were recovered.

2.      The Contested Evidence is Admissible Under Rule 414

Under Rule 414, the court may admit evidence of other "child molestation," which includes any conduct prohibited by 18 U.S.C. Chapter 110 involving child pornography offenses and the attempt or conspiracy to engage in such offenses. See Fed. R. Evid. 414(a), (d)(2)(B), and (F).  The government must provide notice to the defendant 15 days before trial of its intent to use such evidence.  *Id*.  The evidence described above could also be construed as completed violations, attempts or conspiracies to violate Chapter 110.  In considering whether the evidence should be admitted under Rule 414, a court should consider several factors, including (1) the similarity of the acts to the acts charged; (2) the closeness in time of the acts to the acts charged; (3) the frequency of the  acts; (4) the presence or lack of intervening circumstances; and (5) the necessity of the evidence beyond the testimonies already offered at trial.  *United States v. Lemay*, 260 F.3d 1018, 1028 (9th Cir. 2001).

The evidence the United States seeks to introduce is similar to the charged acts because it relates to discussions about the victims, similar sexual acts committed on the victims, and volunteering to take more "custom" shots.  The evidence is extremely close in time to the charged offenses; in fact, the evidence largely overlaps with the charged offenses.  In other instances, the acts occur a mere eight months outside of the charged offenses.  The Ninth Circuit has admitted Rule 414 evidence that occurred far more remote in time. See *Lemay*, 260 F.3d at 1022-23, 1028 (admitting Rule 414 evidence from eight years outside of the charged offense).  As to the third factor, the defendant engaged in frequent prior acts relating to the distribution of child pornography and discussions of producing images over Gigatribe and/or over email.  There are no intervening circumstances and such evidence is needed to establish the Defendant as the perpetrator of the charged offenses.

3.      Rule 403 Weighs in Favor of the Government With Regard to Any Evidence
Admitted Under Rules 404(b) and 414.

For the evidence to be admissible under either 404(b) or 414, the court must engage in a 403 balancing test.  *E.g., Lemay*, 260 F.3d at 1028.  As described above, here, the probative value of the contested evidence is high because it establishes the elements of the offenses, along with Defendant's identity as the perpetrator of the crime, and it meets the other proper uses under 404(b).  The Defendant has not shown why its probative value is outweighed by an unfair prejudice.  And it is not.  It may be

1   incriminating and disturbing evidence, but that does not mean it is unfairly prejudicial. *See Ganoe*, 538

2   F.3d at 1124; *Kapp*, 419 F.3d at 677.

3                                   **III.   CONCLUSION**

4          For the reasons set forth above, the United States should not be forced to stipulate away its case,

5   particularly where Defendant refuses to stipulate to identity.  Additionally, the evidence the United

6   States seeks to introduce is direct evidence or inextricably intertwined with the charged offenses.

7   Alternatively it is admissible under 404(b) to show motive, opportunity, intent, preparation, identity,

8   plan, knowledge, and absence of mistake or accident.  The evidence is also admissible under Rule 414

9   because the acts relate to child pornography offenses.  Finally, all of the evidence passes the Rule 403

10  balancing test.  Thus, Defendant's motion to exclude evidence should be denied.

11

12

13  Dated: March 11, 2015                        BENJAMIN B. WAGNER
                                                 United States Attorney
14

15                                        By:   /s/ Patrick R. Delahunty
                                                 PATRICK R. DELAHUNTY
16                                               MEGAN A. S. RICHARDS
                                                 Assistant U. S. Attorneys
17

18
                                                 /s/ MAUREEN C. CAIN
19                                               U.S. Department of Justice
                                                 Child Exploitation & Obscenity
20

21

22

23

24

25

26

27

28