BENJAMIN B. WAGNER
United States Attorney
PATRICK R. DELAHUNTY
MEGAN A. S. RICHARDS
Assistant United States Attorney
2500 Tulare Street
Suite 4401
Fresno, California 93721
Telephone: (559) 497-4000

MAUREEN CAIN
Trial Attorney
U.S. Department of Justice
Criminal Division
Child Exploitation & Obscenity Section
1400 New York Avenue NW, Suite 600
Washington, D.C. 20530
Telephone: (202) 616-1685

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 Plaintiff,<br><br>      v.<br><br>SHAWN JOSEPH MCCORMACK,<br><br>                Defendant. | CASE NO. 1:11-CR-00324 AWI<br><br>GOVERNMENT'S SENTENCING MEMORANDUM<br><br>DATE: OCTOBER 15, 2015<br>TIME: 10 AM<br>COURT: Hon. Anthony W. Ishii |

## I.     INTRODUCTION

The defendant is a sadistic sexual predator of children. He has a history of seeking out defenseless children too young to speak and sexually assaulting them. Two of his victims lived in California. The defendant feigned friendships with the victims' parents, traveled from long distances to sexually assault the two children, and captured images of his assaults. For his assaults on those two victims, he was charged with two counts of kidnapping and four counts of sexual exploitation of a

1

minor. The defendant proceeded to trial. By the end of the trial, the evidence and jury spoke for the toddler-aged victims, convicting the defendant on all counts. Each count of sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a) and (e) carries a mandatory minimum term of fifteen years imprisonment and a maximum term of thirty years imprisonment. Each count of kidnapping in violation of 18 U.S.C. § 1201(a) and (g) carries a mandatory minimum sentence of twenty years and a maximum sentence of life imprisonment.

The defendant has an undisputed Sentencing Guideline range of life in prison. Due to the aggravating facts and circumstances of the present case, the Probation Office recommends life imprisonment. *See* ECF No. 101 (Final Presentence Investigation Report, hereinafter "PSR"). The United States agrees.

## II.   NATURE AND CIRCUMSTANCES OF THE OFFENSE

The defendant has a long-established pattern of sexually abusing multiple toddler-aged victims and producing child pornography. After producing the images of child pornography, he distributed the images and videos to other pedophiles online, expressing his sexual glee in the violent and perverse acts he engaged in. Even after *multiple* encounters with law enforcement about his crimes, the defendant continued to sexually abuse children and distribute explicit images. As described below, he sought out his victims in various locations throughout the United States.

### A.   California Victims

The defendant gained access to his victims in California through their parents, whom he had met while growing up there. Later, McCormack moved to another part of California, specifically, the Los Angeles area, and then ultimately to Colorado. But he stayed in touch with Mr. S, offering to visit him from both Los Angeles and Colorado. By staying in contact with Mr. S, he met Mr. S's young son "B" and daughter "E" and their mother, Mrs. S. McCormack would typically give short notice to Mr. S that he was going to visit and then show up late at night. McCormack and Mr. S would commonly stay up late, and then Mr. S and Mrs. S would go to bed.

McCormack would sexually assault Mr. S's and Mrs. S's children after their parents went to sleep. During one visit, on March 28 and 29, 2009, McCormack kidnapped their toddler-aged son, "B", and took him to a hotel room in the middle of the night to sexually assault him. As seen during the trial, the sexual assault was violent and sadistic, involving bondage, rape, oral sex, masturbation, and urination. *E.g.,* Government's Trial Exhibits 42, 52, 57, and 69.[1] During one visit to Mr. S and Mrs. S's home in California, the defendant took "B" outside and made sexually explicit pictures of him. *E.g.*, Gov't Trial Exhibits 62 and 63. Also during one visit to "B"'s home, the defendant made sexually explicit images of "B" while he was sleeping. *E.g.*, Gov't Trial Exhibit 39. He later shared all these images online with others and bragged about his exploits. *See* Section E, below.

McCormack was also caught red-handed during a separate kidnapping. On November 6, 2009, he took "B" out of his home, but "B"'s father awoke around 1 a.m. and discovered "B" was missing. The police were called and were waiting at Mr. S's home for McCormack when McCormack arrived with "B". "B" was wearing only a diaper at the time, despite it being November and around one in the morning.

On at least one occasion, McCormack also photographed himself sexually assaulting "B"'s sister "E." She too was a toddler at the time of the rape. The rape took place in McCormack's truck, and therefore, outside of "E"'s home and in a place "E"'s parents had not given McCormack permission to be with their daughter. Trial Tr. Day 3 (ECF No. 93) at pg. 60 of 177; 79 of 177. McCormack later emailed the pictures of "E"'s rape to others. *E.g.*, Gov't Trial Exhibit 130.

McCormack's assaults of "B" and "E" were not crimes of opportunity. Instead, they reflect a premeditated effort to abuse his victims. McCormack traveled from other cities and states to be near "B" and "E", under the pretense of wanting to see Mr. S. Indeed, McCormack made an advance vacation request for unpaid days off to travel to California for his November 2009 visit to "B"'s family, further indicating his abuse was premeditated. Attachment A (Bates 661). Furthermore, McCormack

---

[1] These trial exhibits, and others cited herein, are not attached due to their graphic nature. They were admitted during trial, and the government will provide a copy of any of them to the Court either under seal or for *in camera* review, at the Court's request.

3

brought tools with him to use in his assault, including electrical tape and a ski mask to cover his face. Gov't Trial Exhibit 52.  Such advance planning is clear evidence of a premeditated attack.

### B.  Colorado Victims

While living in Colorado, McCormack perused Craigslist.org for the purpose of meeting women with children.  Eventually, he met one woman, "L", who had two young children aged one and three. McCormack offered to babysit for her, giving him the opportunity to be alone with the children.  While alone with the children, McCormack sexually assaulted them.  Indeed, during this time period McCormack went online and informed others he had access to the children for purposes of producing child pornography.  See PSR at ¶¶ 38-41.  He also offered to, and eventually did, sexually assault his victims and photograph the abuse at the request of others, describing this as an offer of "custom photos." PSR at ¶ 42.

### C.  The Defendant Intentionally Targeted Children That Were Too Young to Protest Or Identify Him As Their Attacker

The defendant's interest in very young children was mercilessly calculated.  He targeted victims that were too young to protest or identify him as their attacker.  When his victims became older, he would cease to abuse them and target other victims.  *See, e.g.,* Government's Trial Exhibits 7, 76-79 (defendant's internet messaging in which he described his interest, and focus on, children wearing diapers and his lack of interest in older children).

### D.  The Defendant Encouraged Other Pedophiles to Commit Violent Sexual Assaults Against Other Young Children

The defendant encouraged other pedophiles to attempt the extreme abuse he inflicted on his victims. For example, in one internet messaging (*i.e.,* "chat") discussion with another pedophile, he wrote:

```
Other Pedophile:    [described his abuse of a victim]
Defendant:          you can do anal with her too and nobody would ever know
Other Pedophile:    but how??
Defendant:          use some lube and put ur dick in her ass
                    they don't bleed
```

4

| | | |
|---|---|---|
| Other Pedophile: | I never was alone with her to try it all | |
| Defendant: | you should lol [i.e., laugh out loud] | |

Government's Trial Exhibit 76.

### E. The Defendant Bragged to Others About his Crimes

The defendant frequently bragged to others about his crimes. He was unashamed and expressed no remorse. For example, in various internet chat sessions he conducted online he wrote:

| | |
|---|---|
| Defendant: | I have private [pictures] |
| | My friends son i take at nights |
| | … |
| | …when i visit i take him out late in the night to a hotel. |
| Undercover Detective: | how the heck do the parents let you take him to a hotel? |
| Defendant: | they don't their asleep when i do it |

Government's Trial Exhibit 7.

| | |
|---|---|
| Other Pedophile 1: | how U play with them [your victims]? |
| Defendant: | I do it all with them |
| Other Pedophile 1: | like what?;-);-) |
| Defendant: | anal |

Government's Trial Exhibit 76.

| | |
|---|---|
| Defendant: | i play [i.e., abuse] with my friends kids sometimes |
| Other Pedophile 2: | wowww your friend know? |
| Defendant: | no i stay the night their then sneak them out at night time |
| | … |
| | they never tell on me |
| | … |
| | i do anal with him |
| Other Pedophile 2: | i didn't think it would fit without tearing him |
| Defendant: | it does |
| | … |
| | but yes they can take it |
| Other Pedophile 2: | o ok…you do it in her but to? ["B"'s sister] |
| Defendant: | i did but not anymore |
| | … |
| | lol she got potty trained and i lost interest when she was out of diapers |

Government's Trial Exhibit 77.

| | | |
|---|---|---|
| Defendant: | did you see the one where i used my dick and put in 2inchs | |
| Other Pedophile 3: | yes | |
| Defendant: | theirs one where i pee on him | |
| | … | |
| | its so awesome taking him out at night | |

Government's Trial Exhibit 78.

| | | |
|---|---|---|
| Defendant: | no i have a kid i do play [abuse] with though | |
| Other Pedophile 4: | oh whos kid is it? … | |
| Defendant: | my friends kid | |
| | … | |
| | i stay the night their and take him out at night | |
| | … | |
| | i take him to a hotel and then i have my fun with him | |
| | … | |
| | id love to start a kid from newborn up | |
| | its so awesome taking him out at night | |

Government's Trial Exhibit 79.

### F.  **The Defendant Encouraged Other Pedophiles to Increase the Volume of Child Pornography They Were Sharing**

The defendant was a frequent participant in online chat sessions with other pedophiles. During such sessions, he shared his own images of child pornography with very little reluctance, including pictures he produced. When McCormack encountered other individuals that were more cautious about sharing sexually explicit images, he expressed frustration at their unwillingness to provide their online community with the images. He would implore others to share child pornography online, rather than keep it stored locally. For example:

| | |
|---|---|
| Defendant: | so do you have any pics of your girl that i can see??? |
| Other Pedophile 2: | no i just make a point of not showing those |
| Defendant: | please i wont share them |
| Other Pedophile 2: | no just cant do that |
| | … |
| | just not safe dont want to take the risk |
| | … |
| Defendant: | please |

Government's Trial Exhibit 77.

### G.  **The Defendant Had a Massive Collection of Child Pornography**

The defendant did not limit his conduct to only the production of images. He also collected

them. Indeed, the defendant amassed a huge collection of child pornography. On his computers, law enforcement agents found nearly 4,000 images and nearly 300 videos of child pornography. PSR at ¶ 11.

### III. DEFENDANT'S UNDISPUTED GUIDELINE CALCULATION REFLECTS THE SERIOUSNESS OF THE OFFENSE AND HIS CONDUCT

Inclusive of all enhancements and adjustments, the PSR calculated McCormack's offense level as 56. PSR at ¶ 96. Because 43 is the maximum total guideline, the PSR concluded that his total offense level is 43. *Id.* at ¶ 98. The United States agrees with this calculation, and the defendant has not challenged it.

The defendant's conduct puts his offense level literally off the chart. The fact that his offense level is essentially 56 (inclusive of all enhancements and adjustments) further demonstrates the seriousness of his offense. Put simply, this is not a case in which the defendant is arguably classified at a maximum offense level of 43. He indisputably qualifies for it.

### IV. SERIOUSNESS OF THE OFFENSE, PROMOTING RESPECT FOR THE LAW, AND PROVISION OF JUST PUNISHMENT

Sexually assaulting children to produce child pornography is undisputedly a grave offense. As the Supreme Court has explained, "[c]hild pornography harms and debases the most defenseless of our citizens. Both the State and Federal Government have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States v. Williams*, 553 U.S. 285, 307 (2008). Congress, too, has explained the difficulties in successfully combating the "immense" problem of child pornography and the "rapidly-growing market" for such materials, which is fueled by new technologies that were largely unavailable when the Sentencing Guidelines were first promulgated. *See* S. Rep. No. 108-2 (2003). Indeed, despite the "pernicious evil" of the crime, Congress has repeatedly expressed its dismay about the "excessive leniency" of federal sentences, *see* H. Rep. No. 108-66; S. Rep. No. 104-358, especially in light of the "continuing harm" caused to the children appearing in such materials, as well as the inflammatory effect it has on the "desires of child molesters, pedophiles, and

child pornographers," which results in a robust and growing market for child pornography and therefore increased abuse of innocent children, *see* Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, § 121, 110 Stat. 3009, 3009-26, 27 (1996), codified at 18 U.S.C. § 2251 note; *United States v. MacEwan*, 445 F.3d 249, 250 (3d Cir. 2006); *United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998) ("[T]he victimization of the children involved does not end when the pornographer's camera is put away.").

Congress has found that child pornography "is a form of sexual abuse which can result in physical and psychological harm, or both, to the children involved." Child Pornography Prevention Act of 1996, 1 Pub. L. No. 104-208, § 121, 110 Stat. 3009 (1996) (codified as amended at 18 U.S.C. § 2251). Congress found that "where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." *Id*. Moreover, Congress found little distinction in the harm caused by a pedophile, be he a distributor or a mere consumer in child pornography, because the mere "existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children." § 121, 110 Stat. at 3009-27. Furthermore, "it inflames the desires of …pedophiles…who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials." *Id*.; *see also New York v. Ferber*, 458 U.S. 747, 757 (1982).

As to additional sentencing factors for this court to consider, there is a strong need to promote respect for the law through an adequate punishment for the defendant. The defendant's calculated and repeated sexual abuse of minor victims—who were very young and absolutely defenseless—over the course of several years and despite great distances, demonstrates the need to promote respect for the law by the defendant and others who have similar desires to sexually abuse children. As to a provision of just punishment, the United States submits that the applicable Sentencing Guideline range of life is an appropriate punishment.

## V. THE NEED TO DETER FUTURE CRIMES AND TO PROTECT THE PUBLIC

The facts in this case create a compelling need to deter future similar conduct by the defendant and other like-minded individuals. Here, the defendant not only abused his victims and shared images of that abuse with others, he went to great lengths to do so. He (1) traveled interstate to be near his victims, (2) responded to online requests from other pedophiles to abuse his victims (essentially, offering abuse-for-hire), and (3) sought out via the Internet the parents of future victims in an effort to be able to abuse those victims.

The defendant's persistence and premeditation indicates that if given the opportunity, he would offend again. The facts of this case confirm such a likelihood. In short, he has been undeterred by any contact with law enforcement. For example, after the defendant was caught kidnapping "B" in November 2009, confronted by law enforcement, and denied further access to "B"'s family, the defendant did not stop his pattern of abuse. He was undeterred. Instead, he focused his efforts on meeting new victims in Colorado. Unfortunately, those efforts were successful. With a premeditated plan, he made contact with new victims by gaining the trust of their parents and sexually abused new victims. He produced images of the abuse and distributed the images to other pedophiles. Indeed, the defendant was also approached by law enforcement officers in July 2010 in Colorado during a search warrant, and despite this additional confrontation with law enforcement, he continued to target and abuse minor victims. *Compare* PSR at ¶ 10 (describing July 2010 search warrant and search of McCormack's house) *with id.* at ¶¶ 39- 42 (describing McCormack's abuse of victims from November 2010 to May 2011).

Additionally, the defendant has never demonstrated remorse for his abuse, and to the contrary, has repeatedly bragged about it. Further, when asked about it under oath during the trial, the defendant perjured himself by denying his role in the sexual assaults of "B" and "E." Further, as noted by the Probation Office, the defendant has continued to take no responsibility for his actions. PSR ¶ 48.

Every step should be taken to deter the possibility of such extreme abuse being inflicted upon another victim. Conduct like the defendant's cannot be tolerated in our society. Accordingly, the United States believes that the only appropriate sentence that will protect the public and promote respect for the law is a life sentence. The defendant should never be given another opportunity to victimize

another child.

## VI. THE NEED TO AVOID UNWARRANTED SENTENCE DISPARITIES

Child sex crimes are among the most egregious and despicable of societal and criminal offenses, and courts all over the United States have upheld lengthy sentences in these cases as substantively reasonable. Below are just some examples of sentences that have been imposed and upheld:

*United States v. Vowell*, 516 F.3d 503, 511-13 (6th Cir. 2008) (upholding as reasonable a 780-month sentence for a 40-year old man who had sexual intercourse with his girlfriend's 8-year-old daughter while being videotaped by his girlfriend);

*United States v. Sarras*, 575 F.3d 1191, 1220-21 (11th Cir. 2009) (sentence of 1200 months upheld as reasonable in case involving convictions for three counts of production involving a thirteen year-old step daughter and one count of possession of child pornography);

*United States v. Huffstatler*, 561 F.3d 694, 698 (7th Cir. 2009) (upholding as reasonable an above-guidelines, 450-month sentence for producing pornographic pictures of a 14-year old boy);

*United States v. Hodge*, 729 F.3d 717, 719 (7th Cir. 2013) (1,380-month sentence reasonable for production of child pornography involving a 9-year old girl, along with distribution and conspiracy to produce child pornography);

*United States v. Cannon*, 703 F.3d 407, 416 (8th Cir. 2013) (840 months for production and receipt of child pornography);

*United States v. Fox*, 357 Fed. Appx. 64 (9th Cir. Nov. 19, 2009) (110-year sentence for sexual exploitation of one victim, along with charges for receipt and possession of child pornography);

*United States v. Hamilton*, 548 Fed.Appx. 728 (2d Cir. 2013) (sentence of 1800 months for five counts of sexual exploitation of a minor and one count of receipt and one count of possession of child pornography upheld as substantively reasonable);

*United States v. Demeyer*, 665 F.3d 1374 (8th Cir. 2012) (120-year sentence upheld as substantively reasonable for 52-year old defendant who pleaded guilty to four counts of sexual exploitation of one victim – advisory USSG range was life);

*United States v. Betcher*, 534 F.3d 820, 828 (8th Cir. 2008) (upholding 750-year sentence

imposed on defendant whose child pornography offenses victimized his granddaughters);

*United States v. Thurman*, 494 Fed. Appx. 828 (9th Cir. 2012) (120-year sentence for sexual exploitation of minors upheld as substantively reasonable – defendant had requested 15 year-mandatory minimum prison term).

*United States v. Grigsby*, 749 F.3d 908, 908-09 (10th Cir. 2014) (upholding 260-year sentence in production of child pornography case where the defendant pled guilty noting "heinous facts underlying Defendant's convictions").

*United States v. Wright*, 340 F.3d 724, 735 (8th Cir. 2003) (affirming life sentence in kidnapping and firearm case where defendant abducted 17 year old female, bound her up with tape, and sexually assaulted her multiple times).

*United States v. Bondurant*, 555 F.2d 1328, 1328-29 (5th Cir. 1977) (upholding life sentence after defendant kidnapped a four-year old girl and transported her from Dallas, Texas to New Orleans, Louisiana).

*United States v. Berryhill*, 880 F.2d 275, 277-78 (10th Cir. 1989), *abrogated on other grounds,* (upholding 300-year sentence for kidnapping, use of a firearm, and interstate transportation of a stolen motor vehicle where defendant kidnapped and raped an adult female).

**IX. RESTITUTION**

This is a mandatory restitution case under 18 U.S.C. § 3663A. Because the victims' losses are not ascertainable at the date of this filing, the United States asks that the Court schedule a date within 90 days of sentencing for a restitution hearing pursuant to 18 U.S.C. § 3664(d)(5). *See also* PSR at ¶ 43 (regarding unreceived victim impact statements).

//
//
//
//
//
//
//

**VIII. CONCLUSION**

When reviewing the facts of this case, a life sentence is warranted and provides just punishment, but not greater than necessary, to address the defendant's crimes and the factors at 18 U.S.C. § 3553(a).

Dated:  September 28, 2015                                       BENJAMIN B. WAGNER
                                                                                        United States Attorney


                                                                                        /s/ Patrick R. Delahunty
                                                                                        /s/ Megan A. S. Richards
                                                                             By:   /s/ Maureen C. Cain
                                                                                        PATRICK R. DELAHUNTY
                                                                                        MEGAN A.S. RICHARDS
                                                                                        Assistant United States Attorney

                                                                                        MAUREEN C. CAIN
                                                                                        U.S. Department of Justice
                                                                                        Trial Attorney