UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. ANTHONY W. ISHII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) 1:11-cr-324 AWI |
| | ) |
| Plaintiff, | ) SENTENCING |
| | ) |
| vs. | ) |
| | ) |
| SHAWN JOSEPH McCORMACK, | ) |
| | ) |
| Defendant. | ) |
| ———————————————————— | ) |

Fresno, California                    Monday, October 13, 2015


REPORTER'S TRANSCRIPT OF PROCEEDINGS


REPORTED BY:
GAIL LACY THOMAS, RMR-CRR
Official Court Reporter
CSR No. 3278

APPEARANCES OF COUNSEL:

For the Government:                  **PATRICK DELAHUNTY**
                                     **MEGAN RICHARDS**
                                     **MAUREEN CAIN**
                                     Assistant U.S. Attorney
                                     2500 Tulare Street
                                     Suite 4401
                                     Fresno, California 93721

For the Defendant:                   **CARL M. FALLER**
                                     Attorney at Law
                                     P.O. Box 912
                                     Fresno, California 93721

3

1    Monday, October 13, 2015                Fresno, California

2                                            11:57 a.m.

3

4            THE CLERK:  The Court calls item number 9, Case

5    1:11-cr-00324 United States versus Shawn Joseph McCormack,

6    sentencing.

7            MR. DELAHUNTY:  Good morning, Your Honor.  Patrick

8    Delahunty, along with Megan Richards and Maureen Cain for the

9    United States.

10           MR. FALLER:  Good morning, Your Honor. Carl Faller on

11   behalf of Shawn McCormack, who is present this custody.

12           THE COURT:  All right, this is the date and time set

13   and continued over for consideration of the presentence report

14   and sentencing.  In this case, I have received and reviewed

15   the presentence report.  Also I have received the Government's

16   sentencing memorandum.

17           Now, there are two documents.  One was Document 102,

18   filed September 28th, and the other one was Document 104,

19   filed September 29th.  They appear to be similar, if not

20   identical.  And then I received the defense response in this.

21   So -- and also the Government's surreply.

22           MR. DELAHUNTY:  Your Honor, I would just note that

23   the difference between the 28th and 29th filing, is that the

24   one on the September 29th had the attachment.  Whereas, the

25   28th did not have the attachment.

4

1          THE COURT:  Okay, thank you.

2          All right, and, Mr. McCormack, have you had a chance

3    to read over the presentence report?

4          THE DEFENDANT: Yes.

5          THE COURT:  And have you fully discussed the report

6    and your sentencing with your attorney?

7          THE DEFENDANT:  Yes.

8          THE COURT:  All right, on behalf of Mr. McCormack,

9    that is, additions, or corrections to the report and further

10   comments regarding sentencing?

11         MR. FALLER:  Your Honor, the first thing I would like

12   to note, I believe that we discovered a typographical error on

13   page 8 on paragraph 21.  It indicates 91 files.  I believe

14   that's supposed to be 19.

15         MR. DELAHUNTY:  Which paragraph are you referring to?

16         MR. FALLER:  21.  "Computer also contained 91 files."

17   I believe that's supposed to be 19.  I think the number has

18   been transposed.

19         MR. DELAHUNTY:  No objection to that, Your Honor.

20         THE COURT:  All right, so that will be corrected at

21   page 8, paragraph 21.  Fifth line down, it should read,

22   "Computer also contained 19 files."

23         Any other additions or corrections?

24         MR. FALLER:  Not to the presentence report itself,

25   Your Honor.

5

1          THE COURT:  Comments regarding sentencing?

2          MR. FALLER:  Yes, Your Honor.

3          Your Honor, Mr. McCormack stands here for sentencing

4   before the Court based upon a jury's verdict, a verdict which

5   he continues to adamantly deny.  His position is here, that,

6   yes, he has done things that have been wrong, and he has been

7   involved in issues concerning child pornography, but he did

8   not commit the acts that led to his conviction by the jury.  I

9   have explained to him that at this forum, we cannot attack the

10  evidence that the Court has to consider, the elements of the

11  crime as been proved by the jury.  That the Court can also

12  take into consideration other facts that might not necessarily

13  have been presented in court in rendering its decision.

14          One thing that I did make note of and in my finding

15  with the Court concerning sentencing was the discussion in the

16  Government's sentencing memorandum where they referred to what

17  is head of the Colorado victims.  I would indicate that, yes,

18  there was some discussion in discovery and discussion in

19  police reports regarding suspicions about activity in

20  Colorado.  However, those -- that information was never

21  incorporated into a prosecution.  No charges were ever filed.

22  And I believe follow-up investigation would indicate that

23  those -- those alleged or suspected acts may very well not

24  have occurred, and they were considered nonprosecutable.

25          I would ask the Court to eliminate that from

1    consideration and from the presentence report because it does

2    not affect the guideline computation, or actually the Court's

3    overall sentence, and it is -- it is there to simply allege

4    another pseudo-offense for which the defendant has not been

5    charged, nor been convicted.

6          I think it is -- the information that the Court has

7    before it is more than sufficient from the evidence that was

8    contained at the trial for the Court to make its decision on

9    what an appropriate sentence would be.

10         And, again, we urge the court to eliminate the

11   information of what is termed the "Colorado victims" from --

12   from the consideration in this case and from the presentence

13   report.

14         The recommendation and what is being sought from

15   the -- from the Government is a sentence of life, and that is,

16   as everyone knows in the federal system, that is --

17   constitutes a sentence of life without the possibility of

18   parole.  It is our considered opinion that whatever has been

19   proven in this case, facts of which Mr. McCormack still

20   disputes, he should not be subject to a sentence which he

21   could have been subject to if he had killed one of these

22   children involved.  And that in order to be just and

23   reasonable, that some sentence that at least provides a

24   prospect of a life after incarceration is what should adopted

25   by the Court.  Something in the neighborhood of a 300 --

1    360-month range.  That would be a sentence of 30 years.  And

2    even if the Court imposed something a little above that, that

3    would at least subject Mr. McCormack to while it would

4    certainly be a significant sentence, it would provide an

5    opportunity for -- for him to have a perspective life after

6    incarceration at an age, which almost all studies have shown,

7    even someone that was guilty of everything that has been

8    alleged would not be subject to being an additional offender.

9           In my discussions with Mr. McCormack, he has also

10   requested, in terms of institution, that he be housed at a

11   place where he can take advantage of treatment programs that

12   are offered within the Bureau of Prisons for the type of

13   offense for which he has been convicted.  Specifically, the

14   receipt and possession of child pornography, which he admits

15   to -- to having be a part of.

16          Again, it is extremely difficult to argue sentencing

17   in a case where the defendant adamantly maintains his

18   innocence of the offenses for which he had been convicted.  We

19   ask the Court to impose a sentence that would at least give

20   him the prospect at this stage of a life after incarceration.

21   He will be pursuing an appeal.  It is my understanding that

22   the Federal Defender has made arrangements for an appointed

23   appellate attorney to be present in court today, to be

24   appointed, as I am likewise relieved, and that will be the

25   next step in the process for Mr. McCormack.  And based upon

1 | that, I would submit it.

2 | THE COURT:  All right.  Is it my understanding that

3 | the -- at least the information regarding the allegations in

4 | Colorado, I think you indicated in your memorandum, that it's

5 | page 11, paragraphs 38 through 41?

6 | MR. FALLER:  I believe it's 38 through 42,

7 | Your Honor.  If I could have a moment.

8 | MR. DELAHUNTY:  I believe it's 38 through 41,

9 | Your Honor.

10 | MR. FALLER:  38 through 41.  You're correct.

11 | THE COURT:  All right, and, Mr. McCormack, is there

12 | anything you wish to say either about the report or your

13 | sentencing before I impose sentence in your case?

14 | THE DEFENDANT:  No, Your Honor.

15 | THE COURT:  On behalf of the Government.

16 | MR. DELAHUNTY:  Your Honor, the probation officer

17 | recommended life as the appropriate sentence in this case, and

18 | the government agrees.  The most appropriate sentence for this

19 | defendant on the conduct with which he was found guilty beyond

20 | a reasonable doubt includes a life sentence.

21 | There is a lot of reasons to support that.  One of

22 | which is that the offense level here, which is uncontested, on

23 | Count 5 is 50.  Of course, that's reduced back to 43.  And

24 | that the defendant's adjusted offense level on all counts is

25 | 55 before being adjusted back to 43.  It's nearly

1    unprecedented.  It shows the seriousness of the crimes of

2    which he has been convicted guilty.

3         Now, I know that the Court has heard all the evidence

4    in the trial, has read the PSR, and I won't summarize all the

5    evidence and all the relevant facts that are undisputed in the

6    PSR, but I will note some of them, to underline the

7    seriousness, the crimes of which this defendant must be

8    sentenced today.

9         Shawn McCormack sexually assaulted a two-year old,

10   videotaped that, and distributed those images online.  He did

11   the same thing with that two-year-old's sibling, who is also

12   about the age of two.  He also distributed those images

13   online.  This shows the pattern of prohibited sexual conduct,

14   and also the type of rape and abuse that was depicted in these

15   images shows sadistic and masochistic behavior.

16        The defendant, when faced with all the evidence that

17   showed beyond a reasonable doubt that is what he had done,

18   never showed remorse.  In fact, never admitted guilt.  And as

19   outlined in the government's sentencing memorandum, in fact,

20   this defendant did the opposite.  This defendant bragged about

21   that conduct.  Went online, took credit for it, and could not

22   have been more proud of what he did.  In fact, he encouraged

23   other pedophiles to do the same thing.  He encouraged other

24   people online to conduct the same sadistic and violent sexual

25   abuse that he had committed.

1          On top of all that, there has been no admission here.

2     In fact, there has been an obstruction of justice by the

3     defendant's testimony at trial.  Mr. McCormack got on the

4     stand, and rather than admit his role in the events that took

5     place in March 2009, and the sexual assault on victim

6     described as B, Mr. McCormack did the opposite.  Testified he

7     wasn't there, he didn't do that.  That's a material matter.

8     It was proven false, and it was willfully done by

9     Mr. McCormack.

10          He gave that testimony at length.  He was

11    cross-examined and confronted with evidence which contradicted

12    that, and in the face of that, continued to not take

13    responsibility, and, in fact, misrepresented what he had done

14    under oath.  And that means an enhancement of obstruction,

15    which is found in the PSR, and the Government recommends in

16    imposing here.

17          Defense counsel suggested that a term of 30 years is

18    sufficient in this case.  It's not.  These are extreme facts

19    and conduct and crimes.  Within this office, they're almost

20    unprecedented.  They're some of the worst of this office --

21    they're among some of the worst that this office has

22    prosecuted.

23          As outlined at trial, this defendant should not be

24    given an opportunity to reenter -- to leave prison and then

25    become a member of the community again.  A term of life

1  imprisonment is the most appropriate sentence.  It's

2  consistent and commensurate with the seriousness of these

3  crimes.  The Court should consider the public safety risk of

4  having Mr. McCormack not in prison for the duration for the

5  rest of his life.

6          And I would also ask the Court to consider the life

7  sentence in relation to other comparable crimes, which we have

8  outlined and I won't repeat, but are outlined in the

9  Government's sentencing memorandum.  And in order to avoid

10  disparate sentences and to sentence Mr. McCormack consistent

11  with his crimes, the Government would submit the only

12  appropriate sentence here includes life imprisonment.

13          With that, the Government submits, would otherwise

14  submit on the PSR, Your Honor.

15          THE COURT:  All right.  All right, anything further

16  on behalf of the defense, then?

17          MR. FALLER:  No, Your Honor.

18          THE COURT:  All right.  Okay.  All right, any legal

19  cause why sentence should not now be imposed?

20          MR. FALLER:  No, Your Honor.

21          THE COURT:  Okay, in this case, I have received and

22  reviewed the presentence report; also the Government's

23  sentencing memorandum and the response on behalf of

24  Mr. McCormack and also the reply by the Government.

25          Now, in this case, first of all, let me indicate as

1   far as from a pragmatic standpoint, I can certainly understand

2   Mr. McCormack not admitting culpability in any way, either

3   before, during, or after the case for a number of reasons.

4   There may be an honest sincere belief that he did not

5   perpetrate these crimes.  The possibility that even if he did,

6   and he understands there is an appeal pending, it may not be

7   in his best interest to perhaps make any admissions.  Whatever

8   the reasons, I don't fault Mr. McCormack for not accepting

9   responsibility, if you will.

10          Having said that, though, I have to consider that in

11  light of the sentencing factors.  As I said, as a practical

12  matter, Mr. McCormack is certainly entitled to maintain a

13  position of innocence, if you will, but I do have to consider

14  all the facts in this case to determine objectively whether or

15  not that would be a reasonable determination for this Court to

16  make.

17          The other thing is, Courts are supposed to be

18  objective, and I plan to be.  So I will make certain comments

19  here.  I'm not going to moralize, I'm not going to preach.

20  I'm not going to accuse.  I'm not going to lecture.  I'm just

21  going to take the basic facts and apply the law that I find

22  appropriate.

23          So in this case, first of all, on the presentence

24  report at page 11, I am going to order that paragraph 38

25  through 41 be stricken.  Now, I recognize that with respect to

1    those allegations, that at page 18, paragraph 109, which may

2    be the -- the same factual underpinnings, there is a charge in

3    Colorado.  A bench warrant was issued back in December of 2011

4    based upon his failure to appeal.  He couldn't appear because

5    he was already in custody in this court.  So that's not an

6    issue of a failure to appear in terms of any culpability.  But

7    I have not seen, and I don't know whether or not the

8    authorities in Colorado have dismissed that or refused to

9    prosecute, or whatever, so I don't know that.  In all candor,

10   it has no impact on my sense one way or the other.  If I had

11   left it in and considered it, it would have little or no

12   impact on the sentence that I intend to pose and the facts

13   that I am going to consider.  So rather than raise an

14   unnecessary appellate issue, I'm just going to order it

15   stricken, so that would not be included.

16          And to the extent that the presentence report and the

17   other documents talk about multiple victims, I'm not referring

18   to alleged victims in Colorado or anywhere else.  What I'm

19   concerned about are the alleged victims or the proven victims

20   by the jury in this case, the two youngsters, and to the

21   extent that there is child pornography, obviously those

22   victims would be considered by the Court.

23          I find that under the advisory sentencing guidelines,

24   in the calculations beginning at page 12, starting with

25   paragraph 49 and extending through the ultimate recommendation

1    or determination as far as total offense level at page 16, I

2    do find specifically that each one of those calculations as

3    far as the base offense level, the adjusted offense level, and

4    ultimately the total offense level are correct.  I do need to

5    make the specific finding with respect to the adjustment for

6    obstruction of justice under Section 3C1.1.  And the appellate

7    courts have made it clear to the Court what the Court must

8    consider.

9           And I'm referring specifically to United States v.

10   Castro-Ponce, a Ninth Circuit case decided 2014, 770 F.3d 819.

11   In this case, of course, I presided over all the pretrial

12   matters and the trial itself.  And I do find -- and, again,

13   this is not -- this is -- what I find to be an objective

14   determination based upon the facts.  It is not charged with

15   any great emotion, which the Court shouldn't be getting

16   involved with.

17          But I do find in this case that Mr. McCormack in this

18   case did give false testimony.  And the reason I say that is

19   that Mr. McCormack obviously, without getting into any detail,

20   denied the factual allegations by the Government as to what

21   transpired and occurred with the two minors in this case.  But

22   it was clear to me from the evidence, and the jury did find,

23   that the evidence was very, very clear that it was

24   Mr. McCormack that perpetrated these offenses.  The evidence

25   was virtually overwhelming just in terms of not just

1   statements made, but by the physical evidence that was shown

2   to the jury, and also the exhibits that were submitted by the

3   Government in this case.

4        And it's clearly -- his testimony is clearly

5   contradicted by the clear weight of the evidence.  So I do

6   find in this case that his testimony was false in that regard.

7        It was clearly a material matter, which was the whole

8   heart of the case.  Mr. McCormack totally denied everything,

9   every allegation, and obviously the offenses in this

10  particular case that were at issue were factually disputed by

11  Mr. McCormack in his testimony.  They obviously went to

12  material matters, they went to every element of the charges.

13       I do find in this case that his false testimony on a

14  material matter was willful, with willful intent to basically

15  attempt to persuade the jury by false testimony.

16       The reason I say that is not simply because of the

17  evidence that was presented to the jury, but the fact that

18  Mr. McCormack was aware of that evidence pretrial.  He was

19  aware of it during the course of the trial, because obviously

20  he heard the Government's presentation.  Nonetheless, still

21  chose to testify falsely, showing a clear, willful intent,

22  having had the opportunity to think about it and determine

23  what to do in this case, whether or not to testify, which he

24  has the absolute right to do.  But in testifying, you cannot

25  testify falsely.

1    In this case, I find that it was with the willful

2  intent to give false testimony on a material matter to the

3  jury, with the intent to attempt to persuade the jury falsely,

4  that he was not a perpetrator in this particular case.

5    The total offense level, then, is 43.  The criminal

6  history category is III.  The pretrial reported -- I'm sorry,

7  the presentence report at page 24 does outline the statutory

8  provisions with respect to the offenses, Counts 1, 2, 3, and

9  4, are 15 to 30 years on each count.  Counts 5 and 6 are 20

10 years to life on each count.  The recommendation is for life

11 imprisonment.

12   With respect to the, then, the advisory sentencing

13 guidelines, the ranges can be anywhere from 15 years to life

14 imprisonment.  That's just one factor that the Court is

15 required to consider under 3553(a).

16   With respect to the sentencing factors, clearly, this

17 is a serious offense, perhaps one of the most egregious and

18 serious offenses.  Possibly short of an actual homicide with

19 intent, and I'm not going to get into details as far as life

20 without possibility of parole or death in those cases.  But

21 they are clearly serious.

22   And as the Government has pointed out, and those of

23 us who deal with these matters on a regular basis understand

24 that with respect to the serious nature, virtually all trial

25 courts, appellate courts, including the Ninth Circuit and the

1   United States Supreme Court have weighed in on the very

2   serious nature of these offenses, both in terms of the four

3   counts and certainly with respect to kidnapping.  And when you

4   deal with kidnapping of very young children, the Courts have

5   indicated that the great concern.

6           Congress has obviously underscored the serious nature

7   of these types of offense by almost regularly enacting

8   legislation that makes punishment greater and consideration of

9   these types of offenses more serious, and the Court

10  understands that.  So I do understand this -- these are very

11  serious offenses.  It is important in terms of adequate

12  deterrence to criminal conduct.

13          Now, the important thing based upon the background,

14  and I'm not going to, again, go into great detail, but as the

15  Government has pointed out, in this case, the evidence

16  presented to the Court describing the e-mails, the chats,

17  et cetera, the targeting of very young victims, it's very

18  clear to the Court that deterrence and punishment are very

19  critical factors for the Court in this case, given what has

20  been described, and I have to agree, is a very predatory

21  nature of defendant's conduct in this case.  It is important

22  to protect the public from any further crimes by defendant and

23  by others, a deterrence to others who would consider these

24  types of offenses.

25          To a certain extent, it will provide defendant with

18

1  needed vocational, educational, or other correctional

2  treatment because I am going to recommend incarceration at an

3  institution that addresses the issues that are a concern to

4  the defendant and to the Court as far as conduct in this case,

5  and also a drug treatment program.

6         In terms of sentencing disparities, the Government

7  has pointed out cases.  There are cases obviously throughout

8  the United States, where sentences are imposed.  Obviously

9  they are very individualized, but it is also clear on these

10 types of offenses that the sentences are fairly strict.  I

11 think that's an understatement, given the listing of the cases

12 that the Government has pointed out at pages 10 and 11 of its

13 sentencing memorandum, filed as document number 104.

14        The Government has pointed out, and I do agree with

15 the Government, with respect to sentencing in this case, the

16 Government does point out in its sentencing memorandum things

17 that were clear in this particular case to this court, that

18 is, targeting very young children, encouraging others by based

19 upon the exhibits that were submitted to the Court,

20 encouraging other individuals to commit similar types of

21 violent attacks on other young children.

22        The fact that in this case, again, exhibits evidence

23 presented to the Court, the defendant did brag to others about

24 these crimes in pretty much detail.  And the nature of these

25 offenses are very serious, not that there was actual sexual

1  assaults committed, but the very nature of the sexual

2  assaults, including bondage, rape, oral sex, masturbation, and

3  urinating on one of the children really shows something well

4  beyond the heinous nature of a rape.  This was an actual

5  humiliation of very, very young children.

6         And I do note, as the Government has pointed out in

7  the sentencing memorandum, the collection of child pornography

8  that the defendant had in his possession are all factors that

9  I do -- have considered in this case.

10        And, again, although I certainly recognize

11  Mr. McCormack's right to continue to deny liability, it is

12  clear that he has not acknowledged any of this speechless

13  behavior, shown any remorse or regrets or feeling of sympathy

14  for the individuals.  And, again, I recognize his right to do

15  that, but it is something that I should and am considering in

16  this particular case.

17        In any event, the bottom line in this case, and this

18  is, I agree, in my almost 20 years on the federal bench

19  hearing these types of cases, probably the most serious that I

20  have seen, regrettably, because of the young age of the

21  children, the acts of taking advantage of these young

22  children, and really the abuse that was put upon these

23  children and the bragging and the displaying of this to others

24  makes this perhaps one of the most, if the most, serious that

25  I have seen in court or have read cases about.

1      So in this case, I do find that the life imprisonment

2  term is appropriate, and I'll sentence accordingly.

3      All right, therefore, pursuant to the Sentencing

4  Reform Act of 1984, it is the judgment of the Court that you

5  are hereby committed to the custody of the Bureau of Prisons

6  to be imprisoned for a term of life on each of Counts 5 and 6

7  to be served concurrently in terms of 360 months on each of

8  Counts 1, 2, 3, and 4, all to be served concurrently, for a

9  total term of life imprisonment.

10      You shall pay a special assessment of $600.  Payment

11  to begin immediately.  I find that you do not have the ability

12  to pay a fine.  Imposition of a fine is waived.

13      If you are released from prison, you shall be placed

14  on supervised release for a term of life on Counts 1 through

15  6, to be served concurrently for a total term of life.

16      Within 72 hours of any release from the custody of

17  the Bureau of Prisons, you shall report in person to the

18  probation office in the district to which you are released.

19  While on supervised release, you shall not commit another

20  federal, state, or local crime, you shall not possess a

21  firearm, ammunition, a destructive device, or any other

22  dangerous weapon.  You shall not illegally possess controlled

23  substances.  You shall cooperate in the collection of DNA as

24  directed by the probation officer.  You shall comply with the

25  standard conditions which have been recommended by the United

1   States Sentence Commission and adopted by this Court.

2          You shall comply with the requirements of the Sex

3   Offender Registration Notification Act as directed by the

4   probation officer, the Bureau of Prisons, or any state sex

5   offender registration agency, where you reside, where you

6   work, where you're a student, or where you're a convicted of a

7   qualifying offense.

8          You shall refrain from any unlawful use of a

9   controlled substance.  You shall submit to one drug test

10  within 15 days of any release from imprisonment, at least two

11  periodic drug tests thereafter, not to exceed four drug tests

12  per month.

13         I'll reserve any issue of restitution and set a

14  hearing for January 11, 2016, at 10:00 in the morning here in

15  this court.  Mr. McCormack, you're entitled to be personally

16  present at that time and hearing.  If you do not wish to be

17  present, you can simply advise your attorney who will let the

18  Court now.

19         You shall also comply with the following special

20  conditions:

21         1.  As directed by the probation officer, you shall

22  participate at an outpatient correctional treatment program to

23  obtain assistance for drug or alcohol abuse.

24         2.  As directed by the probation officer, you shall

25  participate in a program of testing to determine if you have

1   reverted to the use of drugs or alcohol.

2          3.   As directed by the probation officer, you shall

3   participate in a program of outpatient mental health

4   treatment.

5          4.   As directed by the probation officer, you shall

6   participate in a copayment plan for treatment and testing and

7   shall make payment directly to the vendor under contract with

8   the United States Probation Office of up to $25 per month.

9          5.   You shall submit to the search of your person,

10  property, house, residence, vehicle, papers, computer, or

11  other electronic communication or data storage devices or

12  media and effects at any time, with or without a warrant, by

13  any law enforcement officer or probation officer in the lawful

14  discharge of the officer's supervision functions with

15  reasonable suspicion concerning unlawful conduct or a

16  violation of a condition of probation or supervised release.

17         Failure to submit to a search may be grounds for

18  revocation.  You shall warn any other residents that the

19  premises may be subject to searches pursuant to this

20  condition.

21         6.   You shall not possess or use a computer or any

22  device that has access to any on-line computer service unless

23  approved by the probation officer.  This includes any Internet

24  service provider, bulletin board system, or any other public

25  or private computer network.

1        7.  You shall have no contact with known children

2  under the age of 18 unless approved by the probation office in

3  advance.  You're not to loiter within 100 feet of schoolyards,

4  parks, playgrounds, arcades, or other places primarily used by

5  children under the age of 18.  This shall include that you're

6  not to engage in any occupation, either paid or volunteer,

7  that causes you to regularly contact known persons under the

8  age of 18.

9        8.  You shall consent to the probation officer and/or

10  probation service representative, conducting periodic

11  unannounced examinations of (a) any computer, or (b)

12  computer-related device or (c) equipment that has an internal

13  or external modem which is in your possession or control.

14        You shall consent to retrieval and copying of all

15  data for any such computer, computer-related device or

16  equipment, as well as any internal or external peripherals, to

17  ensure compliance with conditions.

18        You shall consent to the removal of such computer,

19  computer-related device and equipment for the purpose of

20  conducting a more thorough inspection and analysis.

21        You shall consent to having installed on any

22  computer, computer-related device and equipment at your

23  expense of any hardware or software systems to monitor the use

24  of such computer, computer-related device and equipment at the

25  direction of the probation officer, and you shall agree not to

1   tamper with such hardware or software and not install or use

2   any software programs designed to hide, alter, or delete your

3   computer activity.  You shall consent to not installing new

4   hardware without the prior approval of the probation officer.

5          9.   You shall not possess, own, view, or read any

6   material depicting and/or describing sexually explicit

7   conduct, including computer images, pictures, photographs,

8   books, writings, drawings, videos, or video games.

9          Sexually explicit conduct is defined in 18, United

10   States Code, Section 2256(2), means actual or simulated (a)

11   sexual intercourse, including genital-genital, oral-genital,

12   or oral-anal, whether it between the same or opposite sex, (b)

13   bestiality, (c) masturbation, (d) sadistic or masochistic

14   abuse, or (e) any lascivious exhibition of the genitals or

15   pubic area of any person.  You shall not frequent those places

16   where a primary purpose is related to such material.

17          10.   You shall provide all requested business and/or

18   personal phone records to the probation officer.  You shall

19   disclose to the probation officer any existing contracts with

20   telephone line and/or cable service providers.  You shall

21   provide the probation office with written authorization to

22   request a record of all outgoing or incoming phone calls from

23   any service provider.

24          11.   You shall consent to third-party disclosure to

25   any employer or potential employer concerning any

1    computer-related restrictions that are imposed upon you.  This

2    includes any activities in which you're acting as a

3    technician, advisor, consultant with or without any monetary

4    gain or other compensation.

5            12.  You shall attend, cooperate, and actively

6    participate in any sex offender treatment and therapy program

7    as approved and directed by the probation officer and as

8    recommended by the assigned treatment provider.

9            13.  Your residence shall be preapproved by the

10   probation officer.  You shall not reside in direct view of

11   places such as schoolyards, parks, public swimming pools, or

12   recreation centers, playgrounds, youth centers, video arcade

13   facilities or other places primarily used by children under

14   the age of 18.

15           Now, with respect to recommendations, there is a

16   recommendation in the probation for Colorado, but I can

17   specify other -- either locations or types of facilities.

18           MR. FALLER:  Yes, there would be a type of facility,

19   Your Honor.  Mr. McCormack's priority is to be at one that has

20   established treatment programs for these kinds of offenses.

21           THE COURT:  All right, I will recommend you be

22   incarcerated at an institution that does provide specific

23   treatment of programs and processes for what I'll just

24   generally term to be sex offender violations.  But only

25   insofar as this recommendation accords with security

1    classification and space availability.

2            I will also recommend that you participate in a

3    500-hours Bureau of Prisons substance abuse treatment program.

4            All right, Mr. McCormack, do you understand the

5    sentence imposed by the Court in your case?

6            THE DEFENDANT:  Yes.

7            THE COURT:  You are hereby advised that you do have

8    the right to appeal.  If you desire to appeal, you must file

9    your Notice of Appeal in writing with the Court within 14 days

10   of today's date.  If you cannot afford an attorney for your

11   appeal, the Court will appoint one for you.

12           It's my understanding that the Federal Defender's

13   Office has designated someone; is that correct?  And that

14   would be Johanna Schiavoni, S-C-H-I-A-V-O-N-I.

15           MR. FALLER:  Yes.  They informed me that she would be

16   the appellate attorney, that perhaps she would be here today.

17   But if not, she has agreed to accept the appointment and my

18   direction of probation -- or excuse me, from the Federal

19   Defender's Office was to request the Court that I be relieved

20   and that she be appointed as appellate counsel.

21           THE COURT:  That will be the order of the Court.

22   Now, I do have a restitution hearing set, so you'll have to

23   consult with appellate counsel as to whether or not you would

24   still be trial attorney of record with respect to restitution,

25   or whether she would be taking that over.

1        MR. FALLER:  Yeah, if I could just have a -- just a

2   comment on that.  I think it would make more sense, since it

3   is probably less -- or could be 50 or less that that hearing

4   is actually going to happen because we're aware of no

5   restitution issues, that this is just something that would

6   come forward to them.  If I am relieved today, then if she

7   determines that she does not want to handle that aspect of the

8   Court, then I think I can go back to the Federal Defender's

9   Office, and I can be appointed for that specific purpose.

10  Otherwise, allows me to close out the case, do all that

11  necessary administrative stuff.

12       THE COURT:  Now, if appellate counsel feels that she

13  can handle that -- because it may be continued, it may be

14  taken off calendar, but if there is a claim for restitution,

15  and she believes that trial counsel is in a better position to

16  handle that, I'll leave it up to you folks in terms of perhaps

17  the special appointment.

18       MR. FALLER:  Right, we can work that out if and when

19  that happens.

20       MR. DELAHUNTY:  I would note, Your Honor, that if

21  there isn't a restitution hearing, perhaps the parties can

22  agree to a stipulation on this.  The Government needs not file

23  a stipulation when -- I mean, if there --

24       MR. FALLER:  I think at this point, it would be with

25  appellate counsel.  If there's something that's actually going

28

1   to happen, that she will notify me, and then I can consult

2   with the Federal Defender and hear how they'd like to proceed.

3       THE COURT:  Because if it is a matter of simply

4   taking it off calendar, then she might be fairly comfortable

5   after consulting with Mr. Faller, and that's obviously in the

6   best interest of all parties.

7       Anything further today, then?

8       MR. DELAHUNTY:  One further item, Your Honor.  There

9   is a preliminary forfeiture order in this case.  The

10  Government request that that order be made final with regard

11  to this defendant.

12      MR. FALLER:  No objection.

13      THE COURT:  I'm sorry, it was filed June 24, 2015.

14  That will be the order of the Court.

15      Anything further by the parties, then?

16      MR. FALLER:  No, Your Honor.

17      MR. DELAHUNTY:  Nothing further.  Thank you.

18      THE COURT:  Okay.

19

20

21

22      I, Gail Lacy Thomas, Official Court Reporter, certify
that the foregoing transcript is true and correct.

23

24  Dated:  11/30/2015         /s/ Gail Lacy Thomas
                      GAIL LACY THOMAS, RMR-CRR

25